*WILLIAM CARSON, *et al.*,

*v.*

ORRIN SMITH, *et al.*

The decision in the case of *Carson & Eaton vs. Smith*, 5 *Minn.*, 78, explained and followed in this case.

Before any portion of the surveyed public lands of the United States can be entered under the act of Congress entitled " An act for the relief of citizens of towns upon lands of the United States under certain circumstances," approved May 23, 1844, they must be settled upon and occupied as a town site.

The rule that to constitute a person an occupant so as to become a beneficiary under the trust provided for in the act of Congress above cited, he must be in possession of the premises personally, or by keeping a representative fairly on the land by improvement, as tenant or agent, applied to this case.

H., as attorney in fact for defendant entered into a bond to plaintiffs to sell and convey them certain premises; the power of attorney from defendant to H., authorized the latter to enter into and take possession of all lands and tenements, &c. in a certain county, to or in which " I am or may be in any way entitled or interested, and to grant, bargain and sell the same, &c." In an action to compel the specific performance of the contract, the answer alleged that the only claim which defendant had or pretended to have to the premises at the time of the execution of the bond by H., was under the act of Congress above cited, and that he had never resided upon or occupied said claim, or any part thereof prior to the making of the bond. The answer in a subsequent portion thereof alleges, that at the time of making the bond, the defendant with other persons named, claimed the land or a large portion thereof platted as the town of W., of which the premises in question were a part, under the act of Congress aforesaid, and had agreed to donate certain lots to whoever should erect a hotel of certain dimensions and value, in said town ; the answer alleges that the bond set forth

---

* Chief Justice Wilson having been of counsel for one of the parties took no part in the consideration or determination of this cause.

Carson et al. v. Smith et al.

in the complaint was not the entire agreement between H., and the plaintiffs, and sets up the entire agreement as alleged by defendant, embracing an agreement by plaintiffs to erect a hotel, &c., and avers a breach of the agreement by plaintiffs. *Held*, that the allegation that defendant had never resided upon nor occupied said claim, or any part thereof prior to the execution of the bond, must qualify the allegation of a claim under the act of Congress which succeeds it.

The mere surveying and plotting lands in lots and blocks, is not sufficient to constitute possession or occupancy under the act of Congress above cited.

The sufficiency of certain evidence to sustain the finding of the court considered and determined.

This action was brought to enforce the specific performance of a contract for the sale of certain real estate, alleged to have been made by the defendant Orrin Smith, by Henry D. Huff his attorney, with the plaintiffs, and to compel payment of the value of certain portions thereof, subsequently sold by said defendant. This real estate, at the time of the execution of the alleged contract, was situate in Fillmore County, but by the Act of Feb. 23, 1854, (*Pub. Stat. page* 81) became a part of Winona County. The action was commenced in June 1857, in the Territorial District Court for Winona County; issue was joined, and upon the hearing the referee to whom the cause had been referred, on motion of defendants, directed judgment to be entered in favor of defendants, upon the pleadings; judgment was perfected, and an appeal was taken by the plaintiffs to this Court, where the judgment was reversed and a new trial ordered. (*See* 5 *Minn. R.* 78.) A new trial was had before the District Court for Winona County without a jury, which resulted in a judgment for defendants; from this judgment the plaintiffs appeal to this Court. The findings of the Court below, and all the other matters necessary for a full understanding of the case will be found in the opinion of the Court.

Berry & Waterman, for Appellants.

FRANKLIN & KEYES, for Respondents.

*By the Court.*—McMILLAN, J.   The complaint in this action alleges, that on the 3rd day of October, 1853, the defendant Orrin Smith, executed, acknowledged and delivered to one Henry D. Huff, a letter of attorney in the following words and figures:

"Know all men by these Presents, That I, Orrin Smith, of Galena, in the State of Illinois, have made, constituted and appointed, and by these presents do make, constitute and appoint, Henry D. Huff, of Winona, Territory of Minnesota, my true and lawful attorney, for me, and in my name, place and stead, to enter into and take possession of all such lands and tenements, hereditaments and real estate whatever, in the County of Fillmore, and Territory of Minnesota, to or in which I am, or may be, in any way entitled or interested, and to grant, bargain and sell the same, or any part and parcel thereof, for such sum or price, and on such terms as to him shall seem meet, and for me and in my name, to make, execute, acknowledge and deliver, good and sufficient deeds and conveyances for the same, either with or without covenants and warranty, and until the sale thereof, to let and demise the said real estate, for the best rent that can be procured for the same, and to ask, demand, collect, recover, and receive all sums of money which shall become due or owing to me by means of such bargain and sale, or lease and demise, giving and granting unto my said attorney, full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes, as I might or could do if personally present, hereby ratifying and confirming all that my said attorney shall lawfully do or cause to be done by virtue of these presents.

In witness whereof, I have hereunto set my hand and seal this third day of October, A. D. 1853.

ORRIN SMITH. [seal.]

Signed, sealed and delivered in the presence of

Jacob S. Denman,<br>G. H. Sanborn."

That the same was recorded on the 6th day of April, 1855, in the office of the Register of Deeds of the County of Winona.

That upon its execution, Huff in pursuance of its provisions entered into possession of the lands and real estate named in the bond hereinafter recited, part and parcel of the real estate mentioned in the said letter of attorney, and being so in possession thereof, afterwards, and while the said power of attorney remained in full force and unrevoked, and on or about the 16th day of April, 1855, at Winona, in said County of Winona, the said Huff as attorney for said Orrin Smith, by virtue of the provisions of said letter of attorney, duly made, executed, sealed and delivered to the plaintiffs, a certain bond or contract for the sale of the real estate therein mentioned, in writing, as and for the act and deed of the said Orrin Smith, as follows:

"Know all men by these Presents, That I, Orrin Smith, of Galena, in the State of Illinois, am held and firmly bound unto William Carson and Henry Eaton of Dunn County, Wisconsin, in the penal sum of ten thousand (10,000) dollars, to be paid to the said William Carson and Henry Eaton, their heirs and assigns, for which payment well and truly to be made, I bind myself, my heirs, executors, administrators and assigns, firmly by these presents.

Sealed with my seal and dated this sixteenth day of April, A. D. 1855.

The condition of the above obligation is such, that if the said Henry Eaton and William Carson, open and keep a lum-

ber yard in the village of Winona, Minnesota, as soon as practicable, and pay a certain note running to said Smith, bearing even date with these presents, according to the conditions of the same, then, and in such case, if the said Orrin Smith shall make, execute and deliver, or cause to be made, executed and delivered unto the said William Carson and Henry Eaton a good and sufficient deed of conveyance of one-sixteenth (1-16) of so much of the village of Winona, as was first claimed by Erwin Johnson and Orrin Smith, and known as Smith and Johnson's claim, as remains unsold at the date of these presents, then the above obligation to be void, else in full force and virtue.

ORRIN SMITH, [SEAL.]<br>
Per HENRY D. HUFF, his Attorney.

Signed, sealed and delivered in presence of

A. COLE. "

That the same was recorded in the office of the Register of Deeds of the County of Winona, on the 28th of April, 1856.

That the tract of land described in the bond as "Smith and Johnson's claim," originally consisted, as plaintiffs are informed and believe, of about 160 acres of land in sections 22 and 23, in township 107, north of range 7 west, in the then Winona Land District, and constituting the then site of the town or village (now city) of Winona in said county.

The complaint alleges on information and belief, that the defendant Orrin Smith was the owner of a large share or proportion of the said Smith and Johnson's claim then remaining unsold: as to the precise extent of such share, the plaintiffs have no knowledge or information sufficient to form a belief, but allege on information and belief, that it was one-fourth part of the entire original claim of one hundred and sixty acres.

That at the time of the execution of said bond, the said

Orrin Smith was the owner of a large amount of real estate in said town of Winona, over and above that specified to be sold and conveyed to the plaintiffs, the price and value of which would be largely enhanced by the establishment and maintenance of a lumber yard in said village of Winona, and as a part of the consideration of said bond or contract, the plaintiffs agreed to open and keep a lumber yard in the said village, as stated in the condition of said bond. That the note mentioned in the condition of the bond, was a promissory note executed by the plaintiffs for the sum of $600, dated 16th of April, 1855, and payable to the order of said Orrin Smith sixty days after its date, and was delivered to Huff, for said Smith, as the residue of the consideration of the bond or contract. It also alleges the establishment and maintenance of the lumber yard, and the payment of the note to Huff for Smith at maturity, and alleges performance of every act and thing on the part of plaintiffs according to the condition of the bond, and the neglect and refusal of the defendant Smith to execute any conveyance.

The complaint also alleges, that the said claim of Smith and Johnson was taken and held by one Erwin Johnson and the defendant Orrin Smith, under the act of Congress passed May 23d, 1844, entitled "An Act for the relief of citizens of towns upon land of the United States under certain circumstances," and was made in the fall of 1851. That some time thereafter, and before the execution of the aforesaid bond, the said Johnson and said defendant Orrin Smith laid out and platted said land into lots and blocks, and duly filed and recorded the same, and that the same was known as Smith and Johnson's claim. That the said Smith and Johnson, prior to the division thereof hereinafter stated, for the purpose of sale and disposition, divided the same into sixteen equal shares, eight of which were owned by the said Orrin Smith. That in pursu-

ance of the statute aforesaid, the Hon. Wm. H. Welch, about the 16th of August, 1855, entered said land at the U. S. Land Office, in trust for the use and benefit of the occupants thereof. That prior to the said contract, Smith had transferred and conveyed four-sixteenths of his interest in said claim to other parties. That about the last of October, 1855, the Hon. Wm. H. Welch, in pursuance of his powers and duties as District Judge, took the proof of the parties claiming title to the said land.

That at that time the claim was considered as divided into sixteen shares, of which the said Orrin Smith claimed to be the owner of four-sixteenths, including the one-sixteenth he had agreed by the terms and conditions of said bond, to convey to the plaintiffs; that the said Judge did then and there award to, and soon thereafter deed to the said Orrin Smith, four-sixteenths of said claim, which conveyance described the following lots, (specifically described in the complaint.) That after the title to the lots had become perfected as aforesaid, they rapidly increased in value, and the plaintiffs' proportion of the same is worth at least, as they are informed and believe, the sum of fifty thousand dollars. That the plaintiffs did not attend upon the said hearing had by the said Judge, for the reason they had no deed, and relying upon the said Orrin Smith, who had agreed to convey to them one-sixteenth thereof, as the proper person to convey to them their interest therein. That after making the bond aforesaid, and prior to the division aforesaid, the parties interested therein sold and conveyed some ten or fifteen lots, situate in said claim, to different individuals, the proceeds of which were paid over to them according to their respective interests, the said Orrin Smith receiving the share which belonged to the plaintiffs. That since said division, and deed from said Judge to said Orrin Smith, and prior to the deed from said Orrin Smith to

Sylvester J. Smith, hereinafter mentioned, said Orrin Smith sold and conveyed to different persons, about seventeen (17) of said lots, but the price he obtained for the same, plaintiffs are unable to state. That on the 12th of July, 1856, the said Orrin Smith sold and conveyed by warranty deed all the residue of the said lots so deeded to him by Judge Welch, to Sylvester J. Smith, his son. The complaint charges notice to Sylvester J. Smith, at the time, of the bond, and of plaintiffs' interest in said lots, and that the conveyance was without consideration, and for the purpose of depriving plaintiffs of their interest: that Sylvester J. Smith has sold a portion of the lots, but the number or the price received therefor, plaintiffs are unable to state, &c.

The answer of defendants denies that Henry D. Huff, as attorney for Orrin Smith, entered into possession of the lands or any part thereof mentioned in the bond or contract set forth in the complaint, and denies that at the time of making said bond or contract the defendant Orrin Smith owned the one-fourth, or any greater or less share of the tract of land mentioned in the complaint and bond, and described as "Smith and Johnson's claim," and denies that at that time, or at any time previous thereto, the defendant Orrin Smith had any legal or equitable interest in said Smith and Johnson's claim, or any claim thereto, save as hereinafter stated; or that at the time of the execution of said bond or contract, the said Orrin Smith was the owner of a large amount, or any amount of real estate in the town of Winona. The answer also puts in issue the allegations in the complaint, "that the note mentioned in the condition of said bond or contract, was a promissory note executed by the plaintiffs for the sum of six hundred dollars, dated the 16th of April, 1855, and payable to the order of said Orrin Smith sixty days after its date, which note the plaintiffs delivered to the said H. D.

Huff for said Orrin Smith, and as the residue of the consideration of said bond or contract;" the answer also puts in issue the payment of the note. It also denies that the plaintiffs established or kept a lumber yard at Winona, as by the terms of the bond they were bound to do, or in any way complied with the terms and conditions of the bond, and alleges failure and neglect of plaintiffs to open or establish such lumber yard, and denies entirely, performance by plaintiffs of the conditions of the bond on their part.

The answer also denies that Orrin Smith took or held jointly with one Erwin H. Johnson, or otherwise, the claim described in the complaint as "Smith and Johnson's claim," or any part thereof, under or in pursuance of an act of Congress, or otherwise, save as hereinafter alleged; and denies that at any time previous to the making of said bond or contract, the defendant Orrin Smith owned eight-sixteenths of said claim, or any part or share thereof whatever.

And further denies that the defendant, Orrin Smith, at the time of taking the proof, about the 1st of October, 1855, claimed to be the owner of any part of the said claim, save as hereinafter specified, or that at any time after the making of the bond or contract, he received any money or other property of any kind, belonging or due to the plaintiffs, for the sale of any land to the said town of Winona. And denies that the sale to Sylvester J. Smith was made for the purpose of depriving the plaintiffs of any interest in the lots, or any of them, or any fraudulent purpose whatever, and avers that it was solely for convenience in disposing of them, as the said Sylvester J. Smith resided in Winona, and the said Orrin Smith resided at Galena, in Illinois. And the answer avers "that the only claim legal or equitable which the defendant Orrin Smith had, or pretended to have in or to said "claim," known as the "Smith and Johnson's claim," or any part or

portion thereof, at the time of the execution of said bond or contract, or at any time previous thereto, was under and by virtue of the act of Congress, approved May 23d, 1844, entitled "An act for the relief of citizens of towns upon lands of the United States, under certain circumstances"; and expressly alleges that said defendant Orrin Smith, had never resided upon or occupied said claim, or any part thereof, prior to the time of the execution of said bond or contract by the said H. D. Huff, but that at the time of the execution of said bond or contract, and said letter of attorney, said Orrin Smith was a resident of the city of Galena, in the State of Illinois, all of which facts the plaintiffs well knew at the time of the execution of said bond or contract." The answer also alleges that the contract stated in the complaint was not the entire contract, and sets up other matters of defence pertaining thereto, which we need not further notice, as in the view we take of the case they are not particularly involved.

The reply puts in issue the new matter set up in the answer. A jury trial having been waived, the cause was tried by the court. The findings of the Judge were as follows :

"I find the following as questions of facts in the case :

1st.   That the land known as "Smith and Johnson's claim" comprised one hundred and sixty acres of land in sections 22 and 23 in township one hundred and seven, north of range seven west, and that the same now is a portion of the site of the city of Winona.

2d.   That the only claim of any kind whatever that the defendant Orrin Smith had to said land prior to the fifth day of November, A. D. 1855, was under and by virtue of an act of Congress, approved 23d May, 1844, entitled "An act for the relief of citizens of towns upon lands of the United States, under certain circumstances"; that the defendant, Orrin Smith, has never resided upon said land, and was never

in the possession of the same by himself or agent prior to the 5th day of November, A. D. 1855.

3d. That Henry D. Huff, mentioned in the complaint, under and by virtue of the power of attorney, set forth in the complaint, executed and delivered the bond mentioned in said complaint, for and in the name of the defendant, Orrin Smith, and that said bond was executed and delivered before said power of attorney was revoked, to-wit: on the 16th day of April, A. D. 1855.

4th. That the promissory note mentioned in said bond was a promissory note executed by the plaintiffs herein to the defendant, Orrin Smith, bearing date the 16th day of April, A. D. 1855, payable sixty days after the date thereof, for the sum of six hundred dollars, and that before the maturity of said note, and before the revocation of the power of attorney, mentioned in the complaint, and while said Huff had said promissory note in his possession, the plaintiffs paid to said Huff the full amount due thereon, and the same was thereupon delivered to the plaintiffs; that the defendant, Orrin Smith, has never received said sum or any part thereof, and refuses to receive the same.

5th. That in the month of April, A. D. 1855, the plaintiffs commenced delivering lumber at Winona for sale. That during the year A. D. 1855, the plaintiffs delivered on the bank of the river at Winona, between seven and eight hundred thousand feet of lumber; that from that time, and until and during a-portion of the year A. D. 1862, the plaintiffs kept up a lumber yard at Winona, placing therein, annually, for sale, two million feet of lumber or over, and that the plaintiffs have not kept up a lumber yard at Winona any portion of the time since the year, A. D. 1862.

6th. That the bond or contract set forth in the complaint in this action, contains the whole agreement in reference to

the subject therein mentioned, as made between the plaintiffs and H. D. Huff, as attorney for the defendant, Orrin Smith, and that said Huff was not induced to make said bond or contract, by reason of any false or fraudulent representations made to him by the plaintiffs, or either of them.

7th. That the sale and transfer from Orrin Smith to the defendant, Sylvester J. Smith, mentioned in the complaint, was made solely for convenience in disposing of and selling said lots, as stated in the defendants' answer.

And as conclusion of law, I find that the plaintiffs are not entitled to the relief demanded in the complaint, or any part thereof, and that the defendants are entitled to judgment against the plaintiffs for the disbursements by them made in this action.                              L. BARBER,

Judge District Court."

Upon the trial of the cause, before any evidence was introduced, the defendants by their attorneys moved for judgment in their favor on the pleadings, specifying several grounds, but all of which were determined by this court adversely to the defendant on a former appeal in this case. *Carson and Eaton vs. Smith*, 5 *Minn.*, 78.

Although the Chief Justice dissented generally from the decision in that appeal, and the court is now differently constituted, we do not feel called upon to examine the ground of that decision, and without expressing any opinion as to the objections raised and determined, shall regard the decision as the law of this case, so far as relates to the questions determined, with this remark, that we do not regard the decision in that case as going to the extent of determining that the specific acts stated in the complaint, which might be regarded as tending to show occupation of the land claimed by Smith and Johnson as a town site under the act of Congress, were in themselves sufficient for that purpose, but only that the

allegations in the complaint were sufficient as a matter of pleading to admit proof of the fact on the trial.

In the view we take of this case, it will only be necessary for us to consider the correctness of the second finding of fact, and the conclusion of law by the court, as above stated, since these are the only findings which the plaintiffs claim to be erroneous. If at the time Huff executed the bond or contract in this case to the plaintiffs, the defendant Orrin Smith had no interest in the land embraced in what was known as the "Smith and Johnson's claim," Huff as the agent of Smith had no authority to make the contract, and could not bind Smith by his act, since the only power he had was conferred by the letter of attorney, and by its terms his power to enter and sell, &c., was confined to lands and tenements, hereditaments and real estate in the county of Fillmore, and territory of Minnesota, to or in which Smith was at the time of the execution of the power, or might be in any way entitled or interested. The pleadings, evidence, and finding of the court, all show that if Smith had any interest in the premises, it must have been acquired under the act of Congress. The act reads as follows :

"That whenever any portion of the surveyed public lands has been or shall be settled upon and occupied as a town site, and therefore not subject to entry under the existing pre-emption laws, it shall be lawful, in case such town or place shall be incorporated, for the corporate authotities thereof, and if not incorporated, for the judges of the county court for the county in which such town may be situated, to enter at the proper land office, and at the minimum price, the land so settled and occupied, in trust for the several use and benefit of the occupants thereof according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted

under such rules and regulations as may be prescribed by the legislative authority of the State or Territory in which the same is situated." * * * *

By the act of Congress approved June 22d, 1838, entitled "An Act to grant pre-emption rights to settlers on the public lands," the sections or fractions of sections of land included within the location of any incorporated town, and any portions of public lands surveyed, or otherwise, which have been actually selected as sites for cities or towns, lotted into smaller quantities than eighty acres, and settled upon and occupied for the purposes of trade, and not of agriculture, cultivation and improvement, and any land specially occupied or reserved for town lots, or other purposes by authority of the United States, were reserved from settlement for agricultural purposes provided for in that act, (5 *U. S. Stat. at Large, p.* 251) and by the pre-emption act of 1841, no sections or fractions of sections included within the limits of any incorporated town, no portions of the public lands which have been selected as the site for a city or town, no parcel or lot of land actually settled and occupied for the purposes of trade, and not agriculture, were subject to settlement or pre-emption under that act—*Id.* 455. To bring any portions of the public lands, except those specially occupied or reserved for town lots or other purposes by authority of the United States, within the class of exceptions above specified, and reserve them from settlement and pre-emption for agricultural purposes under the act of 1838, as sites of towns or cities, the language and spirit of the law plainly require actual occupancy of the lands for the usual purposes of a town or trade; and the only portion of the act of 1841, which would bear any different construction, is that which provides that "no portions of the public lands which have been selected as the site for a city or town," shall be subject to settlement or pre-emption under that act.

Prior to the act of 1844, there was no provision by which individuals could enter any portion of the public lands as town sites, and if towns should spring up on the lands of the United States, the title could only be procured by purchase at the public land sales; the government reserving to itself the benefits resulting from the enhanced price of the lands by the improvements made thereon by the citizens; to secure this benefit to the government such lands were reserved from the operation of the pre-emption law.

The great object of the pre-emption law was to secure the actual settlement and improvement of the public lands for agricultural purposes. If the mere selection of a portion of the land as a town site, without occupancy, was sufficient to prevent its pre-emption, it is evident that vast bodies of the public lands might and would thus be selected by persons having no intention to occupy them, or for any other object than mere speculation, and the lands would in many instances lie vacant and unimproved; and if actual occupancy were not required, the agricultural pre-emptor in making his claim would have no means of acquiring notice of the existence of any such selection, for none is provided, and would be surrounded by so many uncertainties as to his right of settlement, and be liable to so many conflicts with unprincipled speculators in town sites, as to prevent him from using his limited means, enduring hardships and privations incident to the settlement of a new country, and spending a valuable portion of his life in so hazardous an undertaking; thus the settlement of the public lands would be greatly retarded, and the beneficent objects of the pre-emption laws in a great measure defeated.

If anything further is needed to show that actual settlement and occupancy as a town site was necessary to bring lands under this excepted class, the act of 1844 would seem

to be a legislative construction to this effect. The language of this act is, "That whenever any portion of the surveyed public lands has been or shall be *settled upon* and *occupied* as a town site, and *therefore* not subject to entry under the existing pre-emption laws, it shall be lawful," &c. This law does not in *express* terms exempt them from the pre-emption laws, but declares that because they are settled upon and occupied, they are not by the terms of the existing pre-emption laws subject to entry thereunder.

The laws above cited are the existing pre-emption laws, and if the lands are not reserved in them, they are not exempt from settlement thereunder; if they are, this must be a legislative construction of these laws as to the character of lands exempted thereby. It would seem, therefore, that to reserve land as town sites from pre-emption under the existing laws, actual settlement and occupancy are necessary. Such has been the construction placed upon the laws by the department of the executive branch of the government having charge of the disposition of the public lands; and it is sustained by an opinion of Mr. Thompson, Secretary of the Department of the Interior, which although not binding authority upon the courts, commends itself to us as a very clear and able argument in support of this position. *See Lester's Land Laws, p. 432*. The same view has been taken of this matter by the Supreme Court of Michigan in *re Spaulding*, 6 *Mich. R.* 201. The primary object of the act of 1844, was not to reserve any lands from the operation of the existing pre-emption laws, for this had already been done, but to give effect to reservations already existing under those laws, by permitting the pre-emption of portions of the public lands as sites of towns or cities. Whether the existing pre-emption laws reserved from their operation any other lands than those settled upon and occupied as town sites, or not, it is certain

that they did reserve this class, and this is the only class embraced in the terms of the act. The act is limited by its plain language to portions of the surveyed public lands "settled upon and occupied as a town site;" and the corporate authorities, or judges of the county court for the county in which such *town* may be situate, are authorized to enter, &c., "the land so settled and occupied, in trust, for the several use and benefit of the *occupants thereof*, according to their respective interests;" and it is expressly provided "that the entry shall include only such land as is actually occupied by the town." We are therefore of opinion that before any portion of the surveyed public lands can be entered under this act of Congress, they must be settled upon and occupied as a town site; but what facts will constitute a settlement and occupancy, so as to bring the lands within the operation of the act of Congress, must depend upon each particular case, and no general rule can be prescribed which will determine it.

The act clearly contemplates a *bona fide* settlement and occupation of the land as a town site; the mere selection by surveying and platting the ground into blocks, lots, streets, &c., will not be sufficient. *Weisberger vs. Tenney*, 8 *Minn.*, 459.

What facts must exist to constitute a person an occupant, so as to be a beneficiary, and determine the extent of his interests under the trust provided for in the act, is a more difficult and intricate question. Whether actual or personal residence in the town, and actual possession of the premises by such resident, are essential to determine his character as such beneficiary, and the extent of his interest, are questions upon which the members of this court, when differently constituted, would seem to have entertained different views. See *Castner vs. Gunther*, 6 *Minn.*, 131.

It would seem to have been determined, however, by the

court, that personal occupation of the land was not necessary. *Leech vs. Rauch*, 3 *Minn.*, 448. Judge Flandrau, in his opinion in this case on a former appeal, uses the following language : "I see no reason why the occupation of any land in a town site may not be by a person residing without the State, if he keeps a representative fairly on the land by improvement, tenant or agent." *Carson vs. Eaton*, 5 *Minn.*, 90. We are not called upon in this case, however, to determine whether personal residence and actual possession of the premises are necessary. The finding of the court is that the defendant Orrin Smith has never resided upon said land, and was never in the possession of the same by himself or agent prior to the 5th day of November, A. D. 1855.

Occupancy in some way is necessary, we think, to constitute a beneficiary under this act. This can only be actual or constructive. That there was no actual occupancy by Smith is clear from the evidence. As the title to the land was in the government of the U. S., the only way in which he could have constructive possession, would be by a representative in possession for him. We construe the term agent, in the finding of the court, to embrace such representative ; the finding of the court therefore negatives the fact of his possession by a representative, and consequently of constructive occupancy. Smith, therefore, could not under this finding have acquired any rights in the premises prior to 5th day of Nov., 1855.

But it is urged that the finding is not supported by the evidence.

The answer of the defendants, as a part of the defense to the action, sets up that the plaintiff, William Carson, represented to Huff that he had recently seen Smith at Galena, and conversed with him about this property described in the complaint, and that Smith had agreed to sell the plaintiffs the land mentioned and described in the bond, for a consideration

merely nominal, and much below the value thereof, and had desired and requested Huff as his, Smith's attorney, to sell or contract for the sale of said lands to the plaintiffs for such consideration, and that Huff, attorney for said Smith as aforesaid, relying upon and believing such representations, made the contracts afterwards set forth in the answer, part of which is included in the bond or contract set forth in the complaint, which representations the answer avers were wholly false and fraudulent, &c. The answer then proceeds to allege, "That at the time of making the bond or contract set forth in the plaintiffs' complaint, and for a long time previously thereto, the said Orrin Smith, together with David Olmsted, Alfred P. Foster, E. H. Johnson and William A. Jones, claimed the land, or a large portion thereof, laid out and platted as the town of Winona, and of which the said claim known as 'Smith and Johnson's claim' was a part, under and by virtue of the aforesaid act of Congress, and that the said claimants, for the benefit and advantage of said town, had agreed to donate to whoever should erect on the site of said town, a hotel of certain described dimensions, and of the value of ten thousand dollars," certain lots described in the complaint in said town of Winona; the answer then alleges that the contract set out in the complaint is not the entire contract between plaintiffs and Huff, but only a part thereof, and proceeds to set up the entire agreement, and allege the non-performance by the plaintiffs. It is contended by the appellants that this allegation of a claim under the act of Congress to the town site, is presumed to be a legal claim, and that the occupancy of the premises is embraced in the allegation, *that* being necessary to constitute a legal claim.

What would be the effect of the allegation if it stood alone, we need not determine: We have already seen that preceding this allegation, and as matter of defense, it is averred that

the only claim, legal or equitable, the defendant Smith had, or pretended to have, at the time of or previous to the execution of the bond or contract, to these premises or any part thereof, was under this act of Congress, and that he had never resided upon or occupied said claim, or any part thereof, prior to the time of the contract by Huff. We think by a reasonable construction of the pleadings, this allegation must qualify the allegation of a claim which succeeds it, and if the pleading is inconsistent, advantage must be taken of it, in another mode. The appellants' position therefore is not tenable.

A second reason urged by the appellants to sustain their position, that the finding is not warranted by the evidence, is that it "is averred in the complaint, and not denied, that Smith and Johnson laid out and platted the lands into lots and blocks before the 16th of April, 1855; that the map in evidence shows it. This was the inception of his rights in the premises, and the deeds of Judge Welch were their perfection." The answer denies that the defendant Smith took or held jointly with one Johnson, or otherwise, the claim described as Smith and Johnson's claim, or any part thereof, under or in pursuance of the act of Congress, or otherwise, save as afterwards alleged in the answer, namely, that the only claim, legal or equitable, he had or pretended to have to said claim or any part thereof, was under the act of Congress, and that he had never resided upon or occupied said claim or any portion thereof prior to the execution of the bond, and the answer expressly denies that at any time previous to the making the bond, Smith owned eight-sixteenths of the claim known as Smith and Johnson's claim, or any part or portion thereof whatever. The pleadings, therefore, as they stand, show an admission of the fact of making the survey and plat, with a denial of possession. The mere surveying and platting is not sufficient to constitute possession. As is

well remarked by Judge Flandrau in *Weisberger vs. Tenney*, *cited ante*, "It will be seen that the municipal pre-emption law of 1844, *Vol. 5, U. S. Stat. at Large, p.* 657, does not require a survey and platting of the land, to authorize its entry as a town site. It contemplates only a settlement and occupancy as a town site to the extent of withdrawing it from the operation of the pre-emption laws. The surveying, platting and recording of the town, may well be regarded as one act in the series, which together constitute an actual town. It is a public declaration of the intention of the parties to take possession for municipal purposes, and may even be an actual taking possession, but if it is not followed by settlement and occupancy to the extent of creating an actual town, the act avails nothing, and confers· no rights upon those who performed it. " While the surveying and platting *may be* an actual taking possession, it does not follow necessarily that it is so, much less that the plat of survey is evidence of that fact. The surveying and platting of a town site claimed under the act of Congress is properly distinguished, in *Weisberger vs. Tenney*, from the· same acts performed under the statutes of our State. *Comp. Stat. Ch. 26, p.* 371; *Gen. Stat. p.* 233. Our State law pre-supposes that the land so surveyed, &c., is the property of those laying out the town, and that the owners may, by their public record acts, affect the title, and it is only by virtue of this ownership that the proprietors are authorized to proceed under the State law; but under the act of Congress, the surveying and platting in this manner is not provided for, or required; nor is it essential to the validity of a claim; it is therefore an act *in pais*, and since possession, or occupancy, is not necessarily implied from the acts, the proof of the acts in themselves will not establish the fact of occupancy.

But is the fact established, that this surveying and platting

was the inception of Smith's rights in the premises, which were perfected by the deeds of Judge Welch? Since the plot in itself does not prove occupancy, and the deeds are based upon occupancy, it must be established, either by other evidence of subsequent occupancy, or by presumption from the deeds themselves that this survey was the inception of Smith's rights. There is nothing whatever in the deeds showing the inception of the claim; they were executed November 5th, 1855, and recite the fact that Smith's right as an occupant of the premises *conveyed by the deed*, was established by proof taken before the Judge; but the proof was taken as alleged in the complaint, about the last of October, 1855, after the execution of the contract involved in this case; and the premises embracing the town site were entered by the Judge on the 16th of August, 1855, several months after the execution of the contract. While the deeds might be construed to show Smith's occupancy of the premises conveyed by the deed, at the time of the entry of the land by the Judge, they can extend no further, and this would not aid the plaintiffs. Again, what interest had Smith if any in the premises, at the time of the survey, and what was conveyed by the deeds?

If any interest is to be presumed from the plot, it would seem to be an undivided moiety of the premises; while one deed conveys an undivided fifth part of three lots, and the other deed conveys about sixty-one lots in severalty, to Smith, there is no evidence whatever of a division or partition of the premises. The entry of the town by Judge Welch included more land than the Smith and Johnson's claim, and the deed of the lots in severalty, includes lots not embraced in the Smith and Johnson survey, indiscriminately with such as are embraced therein. But we think the joint plotting does not establish a joint possession.

The claimants to land may have equal or unequal, joint or several interests therein, and yet may unite in the survey and plotting of the same; the plot proves nothing of either of these matters. What interest had Smith then at the time of the survey; did he own one acre, or one hundred acres; was his interest an undivided or several interest? What his claim was the plot does not show; in this respect therefore there is no proof of its identity with that upon which the conveyances were based.

What evidence then is there as to Smith's occupancy of the premises from or about the time of this survey in June, 1852, up to the time of the execution of this contract? Smith's residence during the whole period was at Galena, Ill. That Smith claims an interest in the town is true, but we are unable to discover from the evidence any improvements made by him in the town, nor is there any evidence that Johnson occupied the premises for their joint benefit, nor even that Johnson resided in the town. All the conveyances by Smith and wife personally, or by Huff as attorney in fact for Smith, offered in evidence by the plaintiffs, were subsequent to the entry of the lands by Judge Welch, and all but one, we believe, subsequent to the time of taking proof of occupancy by the Judge; nor are we able to discern any evidence that any person (excluding from our present consideration those with reference to Henry D. Huff and Andrew Cole which will be referred to hereafter,) occupied any portion of the premises on behalf of, or claiming under Orrin Smith.

The complaint alleges that prior to the execution of the bond in question, Smith by Huff his attorney, had conveyed four-sixteenths of his interest, but it is not alleged whether this was subsequent to the execution of the power of attorney by Smith, or at what time it was, or to whom it was conveyed; nor is there any evidence whatever with reference to this

Carson et al. v. Smith et al.

conveyance, or whether the grantee or grantees at any time occupied the premises. The only evidence of a conveyance prior to the entry of the lands by the Judge, is that introduced by the defendants, which was a *quit claim* deed dated the 18th of May, 1855, about one month subsequent to the execution of the bond. This instrument purports to be from Orrin Smith, David Olmsted, Alfred P. Foster, Erwin H. Johnson, and William A. Jones, to William Carson and Henry Eaton. The deed is signed "Orrin Smith. [SEAL.] per Henry D. Huff, his attorney," and by the others individually, but is acknowledged only by Johnson; its delivery is expressly denied by the plaintiffs, and the deed repudiated; nor is there any evidence of its ratification by Smith. A naked claim by Smith of an interest in the premises, will not establish his right, nor will he be estopped, even by a conveyance to other persons than the plaintiffs, to deny the validity of his claim under the act of Congress.

But it is urged by the plaintiffs, that the admitted act of Mr. Huff on the 16th of April, 1855, executing the bond at Winona, showed him in possession and exercising acts of ownership for and on behalf of Smith. The fact that Huff made the bond purporting to be the attorney in fact of Smith, is not denied, but his authority to do the act, and his attorneyship for this purpose is controverted. Huff's power under this letter of attorney, at least, for the purpose of this case, authorized him to enter and sell any premises in which Smith the principal "had or may have an interest." This refers to an existing interest at the time of the entry and sale, or exercise of the power. This was the extent of his authority. He was not authorized to do any act with reference to land unless Smith had acquired an interest.

The fact that Huff executed this bond at Winona, does not of itself show that he was in the occupancy of the premises

for Smith, for if he was in the actual occupancy of the premises, yet so far as the letter of attorney is concerned it was without authority, and Smith can neither be bound, nor receive any benefit from such occupancy. But it is claimed that Smith's own testimony shows that Huff was acting for him. Smith says he may have told Carson, that Huff was his agent at Winona; but the fact that Huff was his agent at Winona, unless he was in actual occupancy of the premises, will confer no interest on Smith under the act of Congress. The only testimony tending to show occupancy in Huff, is the fact that he resided at Winona, and executed this bond there. But Winona embraced more than the Smith and Johnson claim, and it appears from the evidence, that Huff had property of his own at Winona, and that the lumber yard referred to in the pleadings and evidence, was established on his property, and that Huff had charge of this lumber yard. It also appears that he had a similar and separate claim for himself at Winona, under this act of Congress, and from all the testimony we think the fact of his occupancy of any portion of the Smith and Johnson claim, for or in behalf of Smith is not established.

It is also urged that "Andrew Cole was attorney for Smith residing at Winona; and the defendants themselves put in evidence a deed executed by Smith, by Huff as his attorney in fact at that place, on the 18th of May, 1855, acknowledged by one of the parties only, it is true, before Cole on the 21st day of May, 1855." We discover no evidence in the case of Cole's attorneyship, except that he states he was employed by Huff to draw the bond in question, and that he had a power of attorney from Smith and others interested to sell lands in Winona. The deed is the one already referred to, and was executed after the date of the bond in controversy, and was acknowledged only by Johnson; this acknowledg-

ment was taken before Cole as Judge of Probate.   We perceive nothing in these facts which can affect the question. Huff some time after told Smith of the contract, and at the same time, that it had fallen through.   It appears from the testimony of Carson, one of the plaintiffs, that when the plaintiffs settled with Huff as their agent at the lumber yard, the note given by them for the money consideration of the land was brought in and allowed; that Huff owed them when they settled, and instead of paying them the amount in money they took this note as money, and he paid them the remainder in money.   Mr. Smith testified with reference to the consideration of the purchase, that he has never received any part of the money, nor received a cent in any way.

The account between Smith and Huff was also presented to the witness Huff, who testifies that Smith repudiated the $600, and struck it out of the account, and did not claim anything from him on account of the $600 item, and refused to include that in the settlement.   In the view we have taken of Huff's authority under the power of attorney, it is evident that he had neither power to take the note or receive payment of it in any manner, and Smith having refused entirely to receive the proceeds of the note, or recognize the payment in any way, there can be no ground from which to infer a ratification of the contract.

We are therefore of opinion, that these findings of the Judge both of fact and law must be sustained.   This disposes of the case, and renders it altogether unnecessary to consider the other points, as we do not think they could affect the finding in the case.

The judgment of the Court below is affirmed.