## MAYOR OF THE TOWN OF ASPEN V. ASPEN TOWN & LAND COMPANY.

1. The writ of *mandamus* should never issue unless the party applying for it shall show a clear legal right to have the thing sought by it to be done in the manner and by the person sought to be coerced. It must not only be in the power of such person, but it must be his duty to perform the act sought to be done.
2. A patent must be construed according to the act of congress authorizing its issuance; and while the recitals therein set forth may indicate the views of the government officers respecting the rights of the parties, the form and manner of executing the patent must be in conformity to the laws of congress.
3. A patent cannot be attacked collaterally.
4. No claimant of lots comprising a portion of a town site is a beneficiary of the trust, or entitled to conveyance without proof of actual occupation, either by the claimant or his grantors, whether such claimant be an individual or a town company.
5. The legislature, in prescribing rules for the execution of the trust, cannot change it by substituting other parties to receive its benefits than those indicated by the law of congress.
6. The law was made for the benefit of the occupants of the town, and not for speculators.

ELBERT, J., dissenting.

### Appeal from District Court, Garfield County.

THE case presented by this record is a proceeding by *mandamus* on part of the Aspen Town & Land Company against the mayor and board of trustees of the town of Aspen, to compel said corporate authorities to issue a deed to the plaintiff for a considerable portion of the lots and blocks comprising the town site of said town, the same being located in the county of Pitkin. The plaintiff's petition in this case sets out the history of the entry of said town site by J. W. Deane, county judge of said Pitkin county, the organization of the plaintiff as a corporation, with power to take, enter, hold, sell and convey real estate prior to said entry, and alleging compliance on its part with the provisions of the legislative act of March 1, 1881, relating to the presentation of its claims to said

county judge, for the lots and blocks described in the petition. It states "that the specified right, interest and estate which * * * petitioner claimed in the parts and parcels of land described in the statement in writing, and hereinafter particularly set forth and described, was the right to occupy and possess such parcels, parts and tracts of land, and to be entitled to receive a deed from such county judge, conveying to it the legal title to such parcels or parts of land, and the right to, and to be the owner of, the title in fee thereto." The effect of the order of the secretary of the interior is averred to be that the trust created by the original entry by Deane became and is now vested in the mayor and corporate authorities, and that, under the state statute, the plaintiff, on payment of costs and charges required by law, became entitled to a deed of conveyance of the lands claimed, there being no contesting claimant. It is alleged that Deane's term of office as county judge has long since expired; that he was succeeded in said office by J. H. King, and he by Thomas A. Rucker, who, at the time of filing the petition, was the present judge of said county court, and that, though often requested, none of said county judges have ever conveyed to plaintiff said lots and blocks, or any part thereof. A demand on the corporate authorities of the town of Aspen for a deed thereto is alleged to have been made by plaintiff on the 14th day of November, 1884, which was also refused. Upon filing this petition, an alternative writ of *mandamus* was ordered to the city authorities, respondents, commanding them to convey by good and sufficient deed or deeds of conveyance the lands described, in accordance with the prayer of the petition, or to show cause, within a given number of days, why they had not done so. The respondents made return to said writ by answer under oath, as required by statute, denying most of the material averments of the petition, including the allegation that the petitioner had no plain, speedy or adequate

remedy in the ordinary course of law. They likewise made the following, among other allegations of fact, to wit: "And respondents further allege that the petitioner is not now and never was an occupant of the lots and parcels of lots described in the petition herein. And for further return to plaintiff's petition, respondents allege and aver that plaintiff is endeavoring to secure and acquire the title and possession of said lots, blocks and parcels of land for speculative purposes, and never has occupied, or intended to occupy, possess, enjoy and improve said parcels of land mentioned in the petition herein as town lots, and that petitioner herein is a pretended and fictitious organization or corporation composed of persons or individuals not inhabitants of the town of Aspen, nor residing therein, or owning or occupying any lot or lots in said town."

The cause was heard by the court, without a jury, upon the petition and answer, and on the following agreed statement of facts:

"That on the 23d day of March, 1880, David Smith, the then county judge of Gunnison county, in which county the land was, made application to the land office to enter the town site of Aspen, in trust for the occupants thereof. A protest was filed against said entry for the reason that the land was mineral land and not subject to entry as a town site. A hearing was had, and on October 22, 1880, the register and receiver decided that the application and entry should be allowed. April 11, 1881, the decision was affirmed, and on the 2d of June, 1881, the entry of the land was allowed to be made. Pending these proceedings, by an act of the legislature, the county of Pitkin was created out of a portion of Gunnison county, which includes the town site of Aspen, and J. W. Deane was appointed and qualified as county judge of the new county, and the town of Aspen became incorporated. J. W. Deane, as such county judge, on the 2d day of June, A. D. 1881, made the entry of the town site as

theretofore applied for, in trust for the inhabitants of the town, and received a certificate of entry therefor. On the 9th of June, 1881, the town authorities protested this entry, and prayed the commissioner of the land office to cancel the same and allow the town authorities to make the entry of said town site. On the 19th of July, 1881, the commissioner made an order suspending the entry until further proceedings on said protest were determined. On the 5th of May, 1884, the commissioner held said entry for cancellation. On the 18th of July, A. D. 1884, the honorable secretary of the interior decided that, by the incorporation of the town of Aspen before the entry was made, the town authorities were the successors in trust of the town site, and modified the order of the commissioner holding the entry for cancellation, and ordered a patent to issue on the entry to the town authorities. Afterwards, on the 3d of March, A. D. 1885, a patent was issued on the entry made by J. W. Deane, as county and probate judge, reciting, among other things, the decision and order of the secretary of the interior, which reads as follows: 'Now know ye, the United States of America, in consideration,' etc., 'have given and granted, and by these presents do give and grant, unto the said J. W. Deane, county and probate judge aforesaid, and to his successors and assigns, in trust as aforesaid, the said tract above described [decribing the Aspen town site], to have and to hold the same, together with all rights, * * * unto the said J. W. Deane, county and probate judge as aforesaid, and to his successors and assigns as aforesaid.'"

Immediately after making the entry of June 2, A. D. 1881, J. W. Deane, as trustee, published notice of such entry, as required by section 3 of the state statute, and the petitioner, the Aspen Town & Land Company, on the 9th day of July, A. D. 1881, signed a statement of its claim to the lots mentioned in the complaint, and delivered it into the office of the county judge, as required by

section 4 of the state statute.   That soon after the order of the honorable secretary of the interior of the 18th of July, 1884, the town of Aspen, by reason of becoming incorporated at the time aforesaid, published a notice under the state statute, and the intervenor* not having made any filing under the notice published by J. W. Deane as county judge, or within ninety days thereafter, of her claim to the lots described in her petition in intervention, filed a statement with the corporate authorities in pursuance of the notice published by them.   At the expiration of the ninety days from the first publication made by J. W. Deane, as trustee as aforesaid, the defendant, the Aspen Town & Land Company, demanded a statement of the expenses and costs due upon the lots theretofore filed upon by it, and tendered to the then acting trustee the amount so due, and demanded deeds for said lots; and, before the commencement of the action by it against the corporate authorities, further demanded said deeds to be executed to them, by the corporate authorities, which demand was refused.   That the only statements filed by the defendant company were those filed on the 9th day of July, A. D. 1881, in the office of J. W. Deane, the then acting trustee.   That the Aspen Town & Land Company was a corporation, duly organized and existing under the laws of the state of Colorado, and has been such corporation at all of the times mentioned in the complaint filed herein.   That the Aspen Town & Land Company was the only person, company or association of persons which filed on the lots described in the complaint herein, in the office of J. W. Deane, as county and probate judge, and that no filings were tendered by any one else covering said lots or parcels of ground or any part thereof.   That on, to wit, the 3d day of March, A. D. 1885, and in pursuance of the entry made by J. W. Deane, as county and probate judge as aforesaid, a patent was issued for the said town site of Aspen, which said patent, excepting the description by metes and bounds, is as follows, to wit:

* NOTE.— There was no intervenor in this case.

'The United States of America to All Whom These Presents Come, Greeting: Whereas, on the 23d day of March, 1880, an application was made to the register of the United States land office at Leadville, Colorado, by the citizens of the town of Aspen, in the county of Gunnison and state of Colorado, to enter the lands hereinafter described, as the town site of Aspen, under the act of congress, approved March 2, 1867, entitled 'An act for the relief of the inhabitants of cities and towns upon public lands,' accompanied by a plat of survey of said town site, executed by B. Clark Wheeler, United States deputy-surveyor, and tender of payment by a deposit of the purchase price of the land with the receiver of said land office; and whereas, by the act of the legislature of Colorado, approved February 23, 1881, the county of Pitkin, embracing a portion of said county of Gunnison, including said town site of Aspen, was created out of said county of Gunnison; and, whereas, it appearing that the town of Aspen had been duly incorporated under the laws of Colorado, and therefore that the corporate authorities of said town are the legal successors of the townsite trust applied for and hereinbefore set forth as found by the decision of the Hon. Henry M. Teller, secretary of the interior, dated July 18, A. D. 1884; and whereas, J. W. Deane, county and probate judge of said Pitkin county, made town site cash entry under date of June 2, A. D. 1881, for the land theretofore applied for, in trust for the inhabitants of said town of Aspen, as appears by the certificate of said receiver of said land office, numbered 647, and bearing the said date of June 2, 1881; and whereas, the honorable secretary of the interior, by his decision aforesaid, has directed that a patent be issued in the name of the corporate authorities of said town of Aspen, upon the entry made by the said J. W. Deane, county and probate judge of said county of Pitkin, in trust as aforesaid, for the following described tract of unsurveyed land, to wit [here follow field-notes]: Now, know ye, that the United States of America, in consid-

eration of the premises, and in conformity with the general acts of congress in such case made and provided, have given and granted, and by these presents do give and grant, unto the said J. W. Deane, county and probate judge as aforesaid, and to his successors and assigns in trust, as aforesaid, the said tract above described, to have and to hold the same, together with all the rights, privileges, immunities and appurtenances of whatever nature thereunto belonging, and the said J. W. Deane, county and probate judge as aforesaid, in trust as aforesaid, and to his successors and assigns in trust as aforesaid: provided, that no title shall be hereby conveyed of any mine of gold, cinnabar or copper, or to any valid mining claim or possession held under existing laws; and provided, further, that the grant hereby made is held and declared to be subject to all conditions, limitations and restrictions contained in section 2386 of the Revised Statutes of the United States, so far as the same are applicable thereto.

'In testimony whereof, I, Chester A. Arthur, president of the United States of America, have caused these letters to be made patent, and the seal of the general land office to be hereunto affixed.

'Given under my hand at the city of Washington, the 3d day of March, 1885, and of the independence of the United States the one hundred and ninth.

'By the President:  CHESTER A. ARTHUR.  [SEAL.]
        'By M. McKEAN, Secretary.

'S. W. CLARK, Recorder of the General Land Office.'"

The court below upon the issues and facts decided the petitioner to be entitled to all the lots and lands claimed by it and described in its petition, and gave judgment that peremptory writ of *mandamus* issue to the corporate authorities of said town, commanding them to immediately issue deeds to the petitioner therefor.

The errors relied on are as follows: *First.* That the court erred in awarding a peremptory writ of *mandamus*

against defendants and respondents.   *Second.* The court erred in deciding that petitioner was entitled to the property claimed by it in its petition.   *Third.* The court erred in entertaining the application for a peremptory writ of *mandamus,* because the remedy of petitioner, if any, is by proceedings in a court of equity.   *Fourth.* That the court erred in deciding that the petitioner was entitled to any lots, or parts of lots, in the town site of Aspen, because it appears that the petitioner was not a *bona fide* occupant of the same, or any of them.

Messrs. A. HEIMS, L. S. DIXON and C. J. HUGHES, for apppellant.

Messrs. TAYLOR and ASHTON and J. M. DOWNING, for appellee.

BECK, C. J.   It is assigned for error that the court erred in entertaining the application for a temporary writ of *mandamus,* because the remedy of petitioner, if any, was by a proceeding in equity.   In support of the remedy selected by the plaintiff, we are referred to section 333, page 102, of the Civil Code, which provides that "the writ of *mandamus* may be issued   *   *   *   to any inferior tribunal, corporation, board, officer, or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station."   Also to the following quotation from High, Extr. Rem. § 80 (and to many other authorities of similar import), viz.: "Whenever a specific duty is required by law of a particular officer, unattended with the exercise of any degree of official judgment or element of discretion, and on the performance of which individual rights depend, *mandamus* is the appropriate remedy for the failure or refusal to perform the duty."   Another statement of the rule, not inconsistent with the foregoing, but more pertinent to this case and supported by authorities cited, was laid down by this court in *People v. Spru-*

*ance,* 8 Colo. 319, as follows: "The writ of *mandamus* is said to be a high prerogative writ, which should never issue unless the party applying for it shall show a clear legal right to have the thing sought by it done in the manner and by the person sought to be coerced. It must not only be in the power of such person, but it must be his duty to perform the act sought to be done."

1. Leaving out of view, for the present, the validity of the plaintiff's claim, did the law cast any duty upon the corporate authorities of the town of Aspen, or were they invested with power to convey to claimants title to the lots, blocks and parcels of land comprising said town site? If not, the remedy by *mandamus* is not available, and it is immaterial whether a remedy in equity existed or not.

It would certainly appear, from the facts and circumstances attending the entry of this town site, and the issue of the patent therefor, as the same are set forth in the agreed statement of facts, and appear in the patent itself, that the patent might have issued direct to the corporate authorities, instead of the county judge. Such would seem to have been the view and direction of the honorable secretary of the interior at the time the entry was held for cancellation. Whether his order was misinterpreted, or whether by inadvertence the patent was issued to the county judge instead of the corporate authorities, we have no means of ascertaining, but the title to the town site was clearly conveyed to J. W. Deane, in his official capacity as county judge, in trust, as required by the acts of congress. The conveyance was likewise pursuant to the entry made by him in the United States land office, which is stated in the patent to have been made "*in trust for the inhabitants of said town of Aspen.*" The granting clause of the patent is in the usual form, conveying the title to said county judge, "*and to his successors and assigns, in trust.*" This language has always been held, so far as we are advised, to

be equivalent to a grant to the officer named, in his official capacity, and to his successors in office, in trust for the use and benefit of the *cestui que trust.* The title of the property in question never having vested in the corporate authorities of said town, it follows that it was not in their power, and consequently not their duty, to execute the deed demanded by the plaintiff and required by the judgment of the court below. If this proposition be correct, the district court was without jurisdiction to award the peremptory writ.

The patent must be construed according to the acts of congress authorizing its issuance; and while the recitals therein set forth may indicate the views of the government officers respecting the rights of parties, the form and manner of executing the patent must be in conformity to the laws of congress. *McGarrahan v. Mining Co.* 96 U. S. 316. The congressional act of March 2, 1867, has, in numerous cases, been held to be substantially similar to the original act of May 23, 1844. It differs as to who may be trustee of a town site in this: that it permits the corporate authorities of an incorporated town to enter the town site, and, if not incorporated, the judge of the county court, "in trust for the several use and benefit of the occupants thereof," while the former act permitted the entry to be made by the county judge in all cases, but in the same manner and for the same purposes. The forms of the patents under both acts are substantially the same; limiting the trust estate to the officer making the entry (designating him by his official title), " *and to his successors and assigns, in trust.*"

The proper construction of the words "limiting the trust " was considered in *Smith v. Pipe,* 3 Colo. 187, 196. Justice Wells, who delivered the opinion in the case, says: "It cannot be doubted that the purpose of the statute is to confer the estate upon the county judge, or the corporate authorities in their official and politic capacity, and to limit it to the successors in office until the trust

should be finally exhausted." This opinion further holds
that the power to take the grant as trustee is vested in
the officer, and not in the individual, and that it is un-
necessary in the patent to designate the incumbent by
his proper name.

The trust in the present case having vested in the
county judge, by the issue of the patent to that officer,
and the grant being limited therein in the usual man-
ner, "and to his successors and assigns in trust," it fol-
lows that the successors mentioned are the successors in
office, notwithstanding the previous recitations in the
patent, for the act of congress does not authorize any
other successors. In holding that the legal title to the
town site vested, under the grant, in the county judge and
his successors in office, in trust for the occupants thereof,
it does not necessarily follow that the trust must con-
tinue to be executed by the said successors until the trust
estate is extinguished. This grant was made under
peculiar circumstances, and possibly the language em-
ployed in the granting clause of the patent does not ex-
press the will of the grantor on this point. If it should
be made to appear, in a proper proceeding, with proper
parties thereto, that the officers of the government, hav-
ing jurisdiction to decide what local official or officials
should be clothed with power to execute this trust, in-
tended by their official action herein that the corporate
authorities of the town of Aspen should execute the
trust, that intent may still be rendered and made effect-
ive as to the unexecuted portion of the trust. *Silver v.
Ladd*, 7 Wall. 219; *Johnson v. Tousley*, 13 Wall. 72.

The patent cannot be collaterally attacked, and its
validity must be assumed in the present action. For the
purposes of this case, it must be treated as issued to the
proper party, and its legal effect determined accordingly.
Since the county judge is the patentee, and, as above
shown, the statute, as construed by this court, names his
successors in office as the successors in trust, the patent

cannot be regarded in this case as changing the latter succession to the town authorities.

2. The remaining errors assigned question the right of the plaintiff to a conveyance of any portion of the large body of lots and blocks claimed by it. The plaintiff's petition contains no allegation that the right of the plaintiff to a conveyance of any portion of these lands has ever been adjudged in its favor. The contrary inference may be drawn from the averments of the petition, that the statement of the plaintiff's claim was made to County Judge Deane, and, although often requested, neither he nor his successors in office, King and Rucker, have ever conveyed to plaintiff the said lots, blocks, pieces and parcels of land, or any part thereof. It is not averred in the petition that any statement of the plaintiff's claim was presented to the corporate authorities for adjudication. There is no averment in the petition, nor any mention or admission in the agreed statement of facts on which the case was tried, that the plaintiff was in any manner an occupant of any portion of the lands so claimed; nor is there any statement therein that the plaintiff is, or ever has been, a resident of said town of Aspen. On the contrary, it is affirmatively alleged in the answer of the respondents that the plaintiff never has occupied any portion of the lands claimed in the petition; that the plaintiff corporation is composed of persons not inhabitants of said town of Aspen, nor residing therein, nor owning or occupying any lot or lots in said town, and that it is endeavoring to acquire the title and possession of said lots for speculative purposes. These averments are neither traversed by a reply nor refuted by proof.

The pleadings and the proofs, on this point, therefore, present the same question passed upon at the present term in the case of *Town of Aspen v. Rucker, ante,* p. 184. It was there adjudged, upon the admissions of the pleadings to that effect, that the Aspen Town & Land Com-

pany never was an occupant or in possession of any portion of the town site of Aspen; that it was not a beneficiary of the trust, and acquired no right to a conveyance by its statement of claim and demand for conveyance. The decisions of the courts upon this point are clear and decisive that no claimant of lots comprising a portion of a town site is a beneficiary of the trust, or entitled to a conveyance, without proof of actual occupation, either by the claimant or his grantors, whether such claimant be an individual or a town company. *Cook v. Rice*, 2 Colo. 131–136; *Clayton v. Spencer*, 2 Colo. 378–380; *Town Co. v. Maris*, 11 Kan. 128; *Sherry v. Sampson*, 11 Kan. 611, 615; *Clark v. Titus*, 11 Pac. Rep. 312, 314.

It was held in *Hussey v. Smith*, 99 U. S. 20, that an occupant has the power to sell or convey his possessory right, and that the purchaser from him may acquire such right to the occupancy as to entitle him to a judgment for a conveyance; but it is not contended that the plaintiff in this case holds any such claim or conveyance. But the plaintiff bases its right to a conveyance of the real estate described in its petition (the same exceeding one hundred blocks and parts of blocks of said town site) upon a compliance with the provisions of the state statute of March 1, 1881 (Laws of 1881, p. 237). In its own language, the statement of the claim was: "That the specified right, interest and estate which * * * petitioner claimed in the parts and parcels of land described in the statement in writing, and hereinafter particularly set forth and described, was the right to occupy and possess such parcels, parts and tracts of land, and to be entitled to receive a deed from such county judge, conveying to it the legal title to such parcels or parts of land, and the right to and to be the owner of the title in fee thereto." It also relies upon the admitted fact that it "was the only person, company or association of persons which filed on the lots described in the complaint herein, in the office of

J. W. Deane, as county and probate judge, and that no filings were tendered by any one else covering said lots or parcels of ground."

Section 4 of the state statute requires that "each and every person or association or company of persons claiming to be an occupant or occupants, or to have possession, or to be entitled to the occupancy or possession, of such lands, or to any lot, block, share or parcel thereof, shall, within ninety days after the first publication of such notice, in person, or by his, her or their duly authorized agent or attorney, sign a statement in writing containing an accurate description of the particular parcel or parts of land in which he, she or they claim to have an interest, and the specific right, interest or estate therein which he, she or they claim to be entitled to receive, and deliver the same into the office of such corporate authorities or judge; and all persons failing to deliver such statement within the time specified in this section shall be forever barred the right of claiming or recovering such lands, or any interest or estate therein, or in any part, parcel or share thereof, in any court of law or equity." Section 1 makes it the duty of the corporate authorities or judge who shall make the entry to dispose of and convey the title to such land, or to the several blocks, lots, parcels or shares thereof, to the persons described in the act, and in the manner specified therein. Section 2 requires the trustee, by a good and sufficient deed of conveyance, to "grant and convey the title to each and every block, lot, share or parcel of the same to the person or persons who shall have, possess or be entitled to the possession or occupancy thereof according to his, her or their several or respective rights or interest in the same, as they existed in law or equity at the time of the entry of such lands, or to his, her or their heirs or assigns." There are other provisions, as in section 27, requiring deeds to be executed to claimants, but all are limited to *person, association and company of persons entitled to the lots and blocks.*

Now, what interest in the numerous lots and blocks of this town site so claimed by it has the plaintiff disclosed? By virtue of what acts done by it does it become *entitled* to deed in fee-simple? It specifies no act save the filing of its claim within the *ninety days,* couched in the phraseology of the statute, and tender of fees and charges. It sets up no claim as heir or assignee of an occupant, does not claim to be or to have been an occupant of any part of the real estate, or even a resident of the town, and, when charged by the respondent with an attempt to acquire the title to this body of lots and blocks for speculative purposes, fails to even deny the charge.

We do not think the act of the legislature will bear the interpretation placed on it by the petitioner and its counsel. Although not framed as perspicuously as it might have been, it does not seem capable of the construction sought to be placed upon it. But if it did, it would be in plain violation of the intent and purposes of the act of congress, which has frequently been construed to include, as beneficiaries of the trust, occupants of the town site only.

In *Lecher v. Chapin,* 12 Nev. 71, the court remark, in discussing this point: " In the consideration of this question we must not lose sight of the fact that the act of congress was intended for the benefit and protection of the actual citizens of the town against those making claim to the land for purely speculative purposes; " citing *In re Selby,* 6 Mich. 193; *Town Co. v. Maris,* 11 Kan. 128; *Jones v. City of Petaluma,* 38 Cal. 397.

In *Town Co. v. Maris, supra,* the court, in discussing the claim of a town company, announced the following doctrine, which is quoted with approval in *Lecher v. Chapin, supra,* and in *Clark v. Titus,* 11 Pac. Rep. 312: " The legislature, in prescribing rules for the execution of the trust, cannot change it by substituting other parties to receive its benefits than those indicated by the law of congress. If individuals or town companies

choose to lay out lands for a town site, and make money by the means, there is no law to prevent it; but they cannot pre-empt the public domain for that purpose under the law of congress. The law was made for the benefit of the occupants of the town, and not for speculators." See, also, *Carson v. Smith*, 12 Minn. 560 (Gil. 458); *Hussey v. Smith*, 1 Utah, 129; *Treadway v. Wilder*, 8 Nev. 98, 99; *Phillpotts v. Blasdel*, id. 67.

We are of opinion that the court erred in entertaining the application for the peremptory writ of *mandamus*, and in awarding said writ, for the reasons above given. The judgment is reversed and the cause remanded, with directions to dismiss the proceeding.

*Reversed.*

ELBERT, J. (*dissenting*).   I concur in the conclusion that the judgment of the court below must be reversed, but dissent from some of the views expressed in the majority opinion.   My opinion in brief is this: If the patent we are considering is to be given any effect, the title to the town site in question (the term of office of the probate judge having expired) is in the corporate authorities of the town, who are designated in the patent as successors in trust.   I rely on the terms of the grant.   These terms must be construed in connection with the recitals contained in the patent.   The grant is to " the said J. W. Deane, county and probate judge as aforesaid, and to his successors and assigns in trust *as aforesaid.*"   The "successors aforesaid " are the corporate authorities expressly mentioned in the recitals of the patent as the legal successors of the trust.   It is not correct to say, as is said in the majority opinion, that " the granting clause of the patent is in the usual form conveying the title to the county judge and his successors and assigns in trust." On the other hand, the grant is to the county judge and "his successors and assigns in trust *as aforesaid.*"   The decisions cited in this connection by the majority opinion

are undoubtedly correct, but it will be seen by what we have said, and more fully by a careful perusal of the patent, that the patent before us presents an entirely different and distinct question from any raised in those cases. I submit that the terms of the patent support the view I have stated, and I know of no authority in conflict with it. Undoubtedly, where, under the law, the patent *properly* issues to the probate judge, the officers of the government cannot, as is claimed in the majority opinion, designate successors in trust other than those contemplated by the law; but in this case the patent did not properly issue under the law to the probate judge. The town was incorporated, and the patent should have issued to the corporate authorities. In saying this I assume nothing, nor do I attack the patent. I take it with its terms and the facts as they appear in its recitals, and construe it *ex visceribus suis.* The foregoing objection, therefore, made in the majority opinion, with respect to the power of the ministerial officers of the government, goes to the *trustee* designated, rather than to the *successors* designated. As it appears from the patent that the grant under the law should have been direct to the corporate authorities in the first instance, I see no legal difficulty in saying that they could take as successors in trust. This is the one respect in which the patent may, without violence, be sustained under the law as being an attempt to comply with the requirements of the law. Act Cong. March 2, 1867. I see no propriety in accepting the terms of the patent only in so far as they *misdirect* the title, and in rejecting them in so far as they vest the title again in the only proper trustees recognized by the law, under the facts disclosed by the patent. The grant is to "the said J. W. Deane, county and probate judge as aforesaid, and to his successors and assigns in trust as aforesaid." I interpret this clause, "that the matter may be of validity sooner than be lost," and the maxim is *ut res magis valeat quam pereat.* Broom, Leg.

Max. 541. I am of the opinion, therefore, that, upon the expiration of the term of office of the probate judge (if not before), the title passed to the corporate authorities as the successors in trust named in the grant. This construction places the title where it should be, both by the terms of the grant and the law governing the grant. In this view no legal proceeding is necessary upon the part of the corporate authorities to perfect their title.

This view involves a dissent upon another point. The town of Aspen being an incorporated town, the patent, under the laws of congress, could lawfully issue to the corporate authorities only, and they alone could exercise the trust. The patent having improperly issued to the probate judge, if it passed the title, it does not follow that he could discharge the trust. He is in the position of one who has a trust estate thrust upon him, in a case where the law designates other and different trustees. While we may treat him as holding the title to the trust estate, we cannot treat him as clothed with the powers conferred by the law upon the proper trustees.