## McGARRAHAN *v.* MINING COMPANY.

1. The statutory provisions prescribing the manner in which a patent of the United States for land shall be executed are mandatory. No equivalent for any of the required formalities is allowed, but each of the integral acts to be performed is essential to the perfection and validity of such an instrument. If, therefore, it is not actually countersigned by the recorder of the General Land-Office in person, or, in his absence, by the principal clerk of private land claims as acting recorder, it is not executed according to law, and does not pass the title of the United States.

2. The record in the volume kept for that purpose at the General Land-Office at Washington, of a patent which has been executed in the manner which the law directs, is evidence of the same dignity and is subject to the same defences as the patent itself. If the instrument, as the same appears of record, was not so executed, and was therefore insufficient on its face to transfer the title of the United States, the record raises no presumption that a patent duly executed was delivered to and accepted by the grantee.

3. The act of March 3, 1843 (5 Stat. 627), in relation to exemplifications of records, does not dispense with the provisions of law touching the signing and countersigning. The record, to prove a valid patent, must still show that they were complied with. The names need not be fully inserted in the record, but it must appear in some form that they were actually signed to the patent when it was issued.

4. The failure to record a patent does not defeat the grant.

ERROR to the Supreme Court of the State of California.

This was ejectment by William McGarrahan in the District Court of the Twentieth Judicial District of California in and for Santa Clara County, against the New Idria Mining Company, to recover possession of certain lands in that State known as the Rancho Panoche Grande. He claimed them under a patent therefor which he alleged had been issued by the United States to Vicente P. Gomez, his grantor, under the act of Congress to

ascertain and settle the private land claims in the State of California, approved March 3, 1851.   9 Stat. 631.   The patent was not produced upon the trial; but the plaintiff put in evidence a certified copy of an instrument, as the same was recorded in a volume kept at the General Land-Office at Washington for the recording of patents of the United States for confirmed Mexican land grants in California, being volume 4 of such records, upon pages 312–321 inclusive.   The concluding portion of that copy is as follows: —

"In testimony whereof, I, Abraham Lincoln, President of the United States, have caused these letters to be made patent, and the seal of the General Land-Office to be hereunto affixed.

" Given under my hand at the city of Washington, this fourteenth day of March, in the year of our Lord one thousand eight hundred and sixty-three, and of the independence of the United States the eighty-seventh.

[L. S.]     " By the President:     ABRAHAM LINCOLN.
                                 By W. O. STODDARD,
                                                " Secretary.
             " Acting Recorder of the General Land-Office."

As the only question decided by this court is, whether the exemplification admitted on the trial of the cause shows upon its face the execution of a patent sufficient in law to pass the title of the United States, no reference is made to the other points which arose in the court below and were elaborately discussed by counsel here.

The District Court rendered judgment for the defendant, which was affirmed by the Supreme Court.   McGarrahan then sued out this writ of error.

Mr. Montgomery Blair, Mr. Matt. H. Carpenter, and Mr. Charles P. Shaw, for the plaintiff in error.

The recording of a document which the law authorizes to be recorded is evidence of the pre-existence of all that is necessary to authorize the recording.   Farrar v. Fessenden, 39 N. H. 268; McCauley et al. v. State, 21 Md. 556; Warner v. Hardy, 6 id. 525; Barton v. Murrain, 27 Mo. 235; Patterson v. Winn, 5 Pet. 239.

The requirement that patents for lands shall be countersigned by the recorder of the General Land-Office is merely directory.

and the countersigning of such an instrument is not essential to its validity. Sedgwick, Stat. and Const. Law, 368–374; *Rex* v. *Inhabitants of Birmingham*, 9 Barn. & Cress. 925; *Cole* v. *Green*, 6 Man. & G. 872; *Gale* v. *Mead*, 2 Den. (N. Y.) 160; *Marchant* v. *Langworthy*, 3 id. 526; *People* v. *Livingston*, 8 Barb. (N. Y.) 253; *Juliand* v. *Rathbone*, 39 id. 101; *Ayres* v. *Stewart*, 1 Overt. (Tenn.) 221; *Hickman* v. *Boffman*, Hard. (Ky.) 348; *Spencer* v. *Lapsley*, 20 How. 264; *United States* v. *Sutler*, 21 id. 170; *Williams* v. *Sheldon*, 10 Wend. (N. Y.) 654; *Hedden* v. *Overton*, 4 Bibb (Ky.), 406; *Exum* v. *Brister*, 35 Miss. 391; *Blount* v. *Benbury*, 2 Hayw. (N. C.) 542; *Philips* v. *Erwin*, 1 Overt. (Tenn.) 235; *Reid's Lessee* v. *Dodson*, id. 313; *Lessee of Stephens* v. *Bear*, 3 Binn. (Pa.) 31; *Lessees of Welter* v. *Beecher*, 3 Wash. 375.

If the name of the recorder be omitted in the record, the first section of the act of March 3, 1843 (5 Stat. 627), cures the defect, by making the mere record of the patent conclusive of its due execution, and copies of such record of the same validity in " evidence as if the names of the officers signing and countersigning the same had been fully inserted in said record."

*Mr. Jeremiah S. Black, contra.*

Patents for private land claims are not valid unless countersigned and sealed by the recorder of the General Land-Office. 2 Stat. 716, sect. 8; 5 id. 111, sect. 6; id. 416, sects. 1, 2; *United States* v. *The Commissioner*, 5 Wall. 563; *The Secretary* v. *McGarrahan*, 9 id. 243; 3 Op. Att'y-Gen. 140, 167, 630.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The Federal question in this case is, whether the record in the volume kept at the General Land-Office at Washington for the recording of patents of the United States issued upon California confirmed Mexican grants, relied upon by McGarrahan as evidence of his title, proves a conveyance by the United States of the land in controversy to Vicente P. Gomez, his grantor. In his behalf, it is contended that the record is itself the grant; or, if not, that it proves the issue to Gomez of a patent which does grant the legal title to the property described.

That the record is not itself the grant of title is evident. The thirteenth section of the act "to ascertain and settle the private land claims in the State of California" (9 Stat. 631) provides, that, "for all claims finally confirmed, . . . a patent shall issue to the claimant upon his presenting to the General Land-Office an authentic copy of such confirmation and a plat of the survey," &c.   By sect. 8 of the "act for the establishment of a general land-office in the Department of the Treasury" (2 id. 717), it is enacted, that "all patents issuing from the said office shall be issued in the name of the United States and under the seal of said office, and be signed by the President of the United States, and countersigned by the commissioner of said office, and shall be recorded in said office in books to be kept for the purpose."   Thus the patent executed in the prescribed form which issues from the General Land-Office is made the instrument of passing title out of the United States. The record of this patent is evidence of the grant, but not the grant itself.   It is evidence of equal dignity with the patent, because, like the patent, it shows that a patent containing the grant has been issued.

The record called for by the act of Congress is made by copying the patent to be issued into the book kept for that purpose.   The effect of the record, therefore, is to show that an instrument such as is there copied has actually been prepared for issue from the General Land-Office.   If the instrument as recorded is sufficient on its face to pass the title, it is to be presumed that the grant has actually been made; but if it is not sufficient, no such presumption arises.   In short, the record, for the purposes of evidence, stands in the same position and has the same effect as the instrument of which it purports to be a copy.   The same defences can be made against the record as could be made against the instrument recorded.   The public records of the executive departments of the government are not, like those kept pursuant to ordinary registration laws, intended for notice, but for preservation of the evidence of the transactions of the department.

This brings us to inquire whether this record shows upon its face the execution of a patent sufficient in law to transfer the title of the premises in controversy from the United States.

And here it may not be improper to note, that although the case shows that in July, 1870, before this suit was commenced, the commissioner of the General Land-Office and the recorder caused to be entered upon the face of the record, over their official signatures, a statement to the effect that the instrument in question was never in fact executed or delivered, McGarrahan rests his whole case upon the record and the evidence it furnishes. This he has the undoubted right to do; but, if he does, he must stand or fall by what it proves. It is his own fault, if, having a valid patent in his possession, he fails to produce it.

By the first section of the "Act to reorganize the General Land-Office" (5 Stat. 107), it was provided that the executive duties relating "to private claims of land, and the issuing of patents for all grants of land under the authority of the government of the United States, shall be subject to the supervision, and control of the commissioner of the General Land-Office, under the direction of the President of the United States;" and by the fourth section, "that there shall be appointed by the President, by and with the consent of the Senate, a recorder of the General Land-Office, whose duty it shall be, in pursuance of instructions from the commissioner, to certify and affix the seal of the General Land-Office to all patents for public lands, and he shall attend to the correct engrossing and recording and transmission of such patents. He shall prepare alphabetical indexes of the names of patentees, and of persons entitled to patents. . . ." By the sixth section, it was further provided that "it shall be lawful for the President of the United States, by and with the advice and consent of the Senate, to appoint a secretary, . . . whose duty it shall be, under the direction of the President, to sign, in his name and for him, all patents for lands sold or granted under the authority of the United States." By the second section of the act of March 3, 1841 (id. 416), the duty of countersigning patents was transferred from the commissioner of the General Land-Office to the recorder. Thus it appears that a patent for lands must be signed in the name of the President, either by himself or by his duly appointed secretary, sealed with the seal of the General Land-Office, and countersigned by the recorder. Until all these things have been done, the United States has not

executed a patent for a grant of lands. Each and every one of the integral parts of the execution is essential to the perfection of the patent. They are of equal importance under the law, and one cannot be dispensed with more than another. Neither is directory, but all are mandatory. The question is not what, in the absence of statutory regulations, would constitute a valid grant, but what the statute requires. Not what other statutes may prescribe, but what this does. Neither the signing nor the sealing nor the countersigning can be omitted, any more than the signing or the sealing or the acknowledgment by a grantor, or the attestation by witnesses, when by statute such forms are prescribed for the due execution of deeds by private parties for the conveyance of lands. It has never been doubted that in such cases the omission of any of the statutory requirements invalidates the deed. The legal title to lands cannot be conveyed except in the form provided by law.

But if either of the requisites to the due execution of a patent may be considered as directory, the countersigning by the recorder should not be permitted to occupy that position. The President may sign by his secretary, but the recorder must sign himself. He countersigns, that is to say, signs opposite to and after the President, by way of authentication. Being specially charged with the duty of attending to the issue of patents, it is peculiarly appropriate that his attestation should be the last act to be performed in the perfection of the instrument, and that he should do it personally.

The record in this case shows an instrument in the form of a patent, signed in the name of the President, and sealed. The place for the signature of the acting recorder is left blank. The name of the President is signed by his secretary. The claim which is made, that Stoddard, the secretary, also countersigned as acting recorder, is not sustained by the evidence. His signature appears only as secretary, and there is nothing whatever to indicate that he attempted to act as recorder. Besides, the law provides (5 Stat. 111, sect. 8), " that whenever the office of recorder shall become vacant, or in case of the sickness or absence of the recorder, the duties of his office shall be performed *ad interim* by the principal clerk on private land claims." It certainly is not to be presumed that the same person will hold

at the same time the offices of secretary to the President for signing patents, and of principal clerk on private land claims. And if it were, his signature as secretary will not be treated as his signature as recorder *ad interim* or acting recorder. He must sign both as secretary and as recorder.

The case is, therefore, one in which the record shows upon its face an instrument prepared for a patent but not counter-signed by the recorder. If a patent thus defectively executed had itself been introduced in evidence, it would not have shown a grant actually perfected. But it is said that the record of the paper is evidence of the fact that the recorder recognized its completeness, and is equivalent to its countersignature. The law is not satisfied with the simple recognition of the validity of a patent by an officer of the government. To be valid, a patent must be actually executed. Before it can operate as a grant, the last formalities of the law prescribed for its execution must be complied with. No provision is made for an equivalent of these formalities. Even an actual delivery of the patent by the recorder in person would not supply the place of his countersignature, any more than the delivery of a paper by a private person without being signed would make it his deed. But the record of a patent would not be necessarily as much a recognition of its validity as a personal delivery by the recorder, because he only attends to the recording, and is not required to do it in person. The only way in which he can lawfully and effectually recognize the validity of a patent is by personally countersigning it.

Again, it is said that the act of March 3, 1843 (5 Stat. 627), remedies the defect, because it provides " that literal exemplifica-tions of any such records which may have been or may be granted in virtue of the provisions of the seventh section of the act, . . . entitled 'An Act to reorganize the General Land-Office,' shall be deemed and held to be of the same validity in all proceedings, whether at law or in equity, wherein such exemplifications are adduced in evidence, as if the names of the officers signing and countersigning the same had been fully inserted in such record." This act does not, however, dispense with the signing and coun-tersigning. The record, to prove a valid patent, must still show that these provisions of the law were complied with. The

names need not be fully inserted in the record, but it must appear in some form that the names were actually signed to the patent when it issued. If they are partially inserted in the record, it will be presumed that they fully appeared in the patent; but no such presumption will be raised if no signature is shown by the record. Here no signature does appear, and consequently none will be presumed.

The failure to record the patent does not defeat the grant. It only takes from the party one of the means of making his proof. If he can produce the patent itself, and that is executed with all the formalities required by the law, he can still maintain his rights under it. He is not, therefore, necessarily deprived of his title because of a defective record. He is in no worse condition with the signatures omitted than he would have been if the description of his land had been erroneously copied, or other mistakes had been made which rendered the record useless for the purposes of evidence. A perfect record of a perfect patent proves the grant; but a perfect record of an imperfect patent, or an imperfect record of a perfect patent, has no such effect. In such a case, if a perfect patent has in fact issued, it must be proved in some other way than by the record. It is undoubtedly true, that, when a right to a patent is complete and the last formalities of the law in respect to its execution and issue have been complied with by the officers of the government charged with that duty, the record will be treated as presumptive evidence of its delivery to and acceptance by the grantee. But until the patent is complete, it cannot properly be recorded, and consequently an incomplete record raises no such presumption.

Again, it is said that the record of an instrument which the law requires to be recorded is *prima facie* evidence of the validity of the instrument. That is undoubtedly true, if the instrument recorded is apparently valid. The presumption arising from the record is, that whatever appears to have been done, actually was done. If the record shows a perfect instrument, the presumption is in favor of its validity; but if it shows an imperfect instrument, a corresponding presumption follows. Here the instrument recorded appears to have been incomplete, and consequently it must be presumed to be invalid. This pre-

sumption will continue until overcome by proof that the instrument as executed and delivered was valid.

We are of the opinion that, because this record dres not show a patent countersigned by the recorder, it is nr ͻ sufficient to prove title in the party under whom McGarrał ͻn claims. This makes it unnecessary to consider any of ʈ ⁀ie other questions which have been argued; and the judgmr ͺt is

*Affirmed.*

MR. JUSTICE FIELD and MR. JUSTICE HARLAN took no part in the decision of this cause.