ATCHISON, TOPEKA & SANTA FE RAILROAD CO. *et al* v. J. M. HAYNES, *County Treasurer, et al.*

(Filed Aug. 25, 1899.)

1. SCHOOL TAX—*Repeal of Statute—Injunction.* The provisions of section 5791, Statutes 1893, relating to public schools, and authorizing the board of county commissioners to annually levy on the taxable property of the county a tax not to exceed 1 per cent. for a county school fund, is not repealed, directly or by implication, by the provisions of the act amendatory of the general revenue laws, approved March 8, 1895, (Sess. Laws 1895, p. 210,) and the making of such levy cannot be enjoined.

2. STATUTE—*Construction—Exception.* When statutes contain two distinct provisions, one being specific with precise directions to do a particular thing for a specific purpose, and the other general, prohibiting certain acts which, in their general sense, include the particular thing authorized by the specific direction, the general prohibition clause does not control the specific authority. The particular direction is to be construed in the nature of an exception.

(Syllabus by the Court.)

*Error from the District Court of Kay County; before B. T. Hainer, District Judge.*

*Asp, Shartel & Cottingham,* for plaintiffs in error.

*C. L. Pinkham, County Attorney,* for defendants in error.

Action by the Atchison, Topeka & Santa Fe Railroad company and the Southern Kansas Railway company, plaintiffs, against J. M. Haynes, county treasurer, and the board of county commissioners of Kay county, defendants, to enjoin the collection of certain taxes levied for the year 1897 for school purposes. From a decree

dissolving a temporary injunction and dismissing the petition, plaintiffs bring error. Affirmed.

Opinion of the court by

BURFORD, C. J.: The one question involved for consideration is, has the board of county commissioners authority to levy a tax upon all the taxable property within the county for the support of public schools? The proposition presents for inquiry no question of legislative power, but a question of legislative purpose only, to be determined by the interpretation that must be given to various legislative enactments relating to the subject. The authority for the levy of the tax in question was based upon section 5791, Statutes 1893, which section is as follows:

"SEC. 5791. The county commissioners shall, at the time the annual taxes for territorial and county purposes are levied, levy on the taxable property of the county a tax not to exceed one (1) per cent., which shall be collected as other taxes; and the money so realized, together with the proceeds of all moneys collected from fines, forfeitures, penalties, proceeds from the sale of estrays, and all moneys paid by persons as equivalent for exemption from military duty, and all moneys collected from marriage licenses, shall constitute a county school fund, and be appropriated exclusively for the purpose of establishing and supporting public schools for not less than three or more than nine months in each year, and defraying current expenses of · the same of every description; and said county school fund shall be apportioned to each school district in said county in proportion to the number of school children over the age of 6 years, and under the age of 21 years, resident therein, as shown by the last annual enumeration of the same. The county treasurer shall pay upon the order of the director and clerk of the district to each district

—37

treasurer in the county all school moneys in the county treasury belonging to the district, provided that said order shall be accompanied by a certificate from the district clerk, stating that the treasurer of the district has executed and filed his bond as required by law."

It is conceded by counsel for plaintiffs in error that the provisions of the above section are ample to authorize the levy of the taxes in question, and, if the same were in force and effect in 1897, when the taxes in question were sought to be levied, said taxes were thereby fully authorized; but it is contended that the provisions of said section which authorized the levy of such tax had been repealed prior to the levy of the tax in question.

By section 10, art. 2, ch. 73, Statutes 1893 and section 5773, *Id.*, relating to schools, it is provided that the inhabitants qualified to vote at a school meeting lawfully assembled shall have power, among other things, "to vote a tax annually, not exceeding 1 per cent. on all the taxable property in the district, as the meeting shall deem sufficient for the various school purposes, and distribute the amount as the meeting shall deem proper in the payment of teachers' wages and the purchase or lease of a site." In said section it was also provided that: "If the inhabitants of any school district shall neglect or refuse to make such levy, then the board of county commissioners of such county, through the advice of the county superintendent of public instruction, shall levy a tax annually, not to exceed 2 per cent. on all taxable property in the district."

The provisions of these sections comprised the authority for levying taxes for the support of district schools,

and the scheme of taxation for such schools clearly con-
templated thereby is that a fund not exceeding 1 per cent.
shall be levied by the county commissioners upon all the
taxable property within the county, and such fund be
apportioned to the various school districts in proportion
to the number of children of school age in each of said
districts; and, in addition thereto, the inhabitants of
each district, qualified to vote at school meetings, may
vote an additional tax of 1 per cent. on the taxable
property within said district. It is clearly contemplated
by these provisions that the burden of supporting the
public schools shall be divided between the taxable prop-
erty of the county at large and the taxable property
within each school district; the county at large bearing
a part of the burden of the support of a school in any
particular district, and the district bearing the remain-
ing part of such burden.

Section 5791, Statutes 1893, is section 15, art. 3, ch.
73, *Id.*, which chapter is entitled "An Act for the Sup-
port and Regulation of Common Schools." This chapter
is comprehensive, and covers every phase of the subject-
matter, and is confined strictly to the matter of the
organization, management, regulation, conduct, and sup-
port of the public school system of the Territory. It is
contended that the provisions of the school law author-
izing the board of county commissioners to levy a gen-
eral school tax of 1 per cent. is repealed by the provisions
of an act upon the subject of revenues, approved March
8, 1895 (Sess. Laws, 1895, p. 216.) This act is entitled
"An Act to Amend Sections 1, 2, 3, and 4, of Article 8
of Chapter 70, the Same Being Sections 5625, 5626, 5627,
and 5628, of the Statutes of 1893 of the Territory of

Oklahoma." The sections referred to in the title of this act, and which are amended, are parts of the chapter on "Revenue," and relate to the general subject-matter of listing and assessing property, levying and collecting taxes for territorial and county purposes, and the manner of appropriating and disbursing the revenues collected for such purposes. This chapter and the chapter relating to schools are entirely distinct and independent, and their provisions have no reference to each other. Section 5627, as amended by the act of 1895, is now as follows:

"At the regular meeting in July of each year the board of county commissioners shall prepare an itemized estimate of the necessary expenses of the county during the ensuing year, including the amount necessary to meet outstanding indebtedness, as evidenced by bonds legally issued and the interest thereon, and such estimate shall state the amount of revenue necessary to be raised for each fund, and the rate of levy necessary to raise such estimated revenue with 25 per cent. added thereto as allowance for delinquent taxes. The levies for county purposes shall be a separate, specific, and sufficient levy for the payment of salaries; a levy for court expenses not exceeding three mills; for support of the poor, including insane, not exceeding two mills; for roads and bridges, not exceeding two mills; for county supplies, not exceeding three mills; for contingent fund, not exceeding three mills, which last item shall include all county expenses not properly chargeable against any of the other funds hereinbefore provided for; and for a sinking fund, to be paid in money, such rate as in the estimation of the board of county commissioners will pay one year's interest on all outstanding bonded debt of the county, together with such part of the principal as shall be by law required, such fund to be applied, first, to the payment of the interest, and second to the

payment of the principal. Such estimates shall contain the foregoing items, together with the estimated amount of necessary revenue to be raised for each fund, and the rate of levy necessary to raise such revenue for each fund, separate. It shall be entered at large by the commissioners upon their records, and shall be published in two successive weekly issues in some newspaper published in the county or if none be published in the county, then in some newspaper of general circulation therein; and no levy of taxes shall be made for any other purpose, or in any greater amount than is specified in such estimate as published; but any item or amount may be stricken from such estimate, or reduced at the time the levy is made."

The remainder of this section relates to the time and manner of making levies, and other matters not pertinent to the question under consideration. Section 5 provides that "all acts or parts of acts so far as they conflict herewith are hereby repealed."

A comparison of the provisions of these sections, both before and as amended, discloses the purposes of the legislature in enacting the changes of 1895. The law before amendment made provision for road and bridge fund, sinking fund, and an ordinary county revenue fund, including the support of the poor; and there was no provision requiring the board of county commissioners to publish any estimates of the expenses of the county for the year following the levies for taxes. It was evidently the purpose of the legislature, in enacting the amendments in question, to require specific and separate funds for each class of county liabilities, and to require specific and separate levies for each of these funds, based upon a previously prepared estimate of the amount of revenue necessary

to meet the expenses for which each fund would be liable. The whole scope of the original chapter and the amendments disclose no purpose on the part of the legislature to deal with other than the revenues to be raised for strictly county purposes—that is, the expenditures over which the board of county commissioners exercise control—and to specifically classify the claims they are required to audit, allow, and pay. The amended section limits its operation to "the levies for county purposes shall be separate, specific," etc. The levy of the general county tax for the public schools is in no sense a levy for "county purposes." While it is true this tax is levied on all the taxable property in the county, it is levied for "school purposes," and not "county purposes." This tax, when collected, becomes a part of the "county school fund," over which the board of county commissioners have no control whatever. It is apportioned to each school district in the county in proportion to the children of school age in each district, and the school boards have control of the fund and of its expenditure. It is a school-tax levy for a county school fund, for school purposes, authorized by the school law, and under the control of the school officers. The board of county commissioners are simply designated as the power for making the levy, the same as they make the levies for the school district, cities, towns, and for separate schools; but none of these levies are for county purposes as contemplated in the act of 1895.

In the case of *Beatty v. Walker*, 1 Okla. 178, 32 Pac. 53, this court had under consideration the provisions of the school law relating to the election of school officers in cities of the first class, and it was there contended that

the provisions of the general election law were intended to govern in all such elections. We then said, in speaking of the chapter relating to public schools: "The act further defines the powers and duties of the several officers and members of the boards, and the act, standing alone, without the aid of any other statutes, provides all the machinery for operating a complete system of free schools in the Territory, and was evidently intended by the legislature to control and govern in all matters pertaining to the public schools."

If the rule of construction contended for by counsel for plaintiffs in error is to prevail, and the board is prohibited from making any levies for any purposes other than those specifically designated in the amended act of 1895, then it conclusively follows that the law authorizing a levy for separate schools, under article 8, ch. 73, Statutes 1893, is also repealed. Section 3 of that article is as follows: "In all counties in which the electors have voted to establish separate schools for white and colored children, the board of county commissioners shall annually levy a tax on all taxable property in said county sufficient to maintain such separate schools, and said taxes shall be collected in the same manner as other taxes are collected." This is a part of the general school law of the Territory, and if the provisions of section 5791, authorizing the county board to levy the general tax for a county school fund, are repealed, then the provision for levying a tax for support of colored schools is also repealed, and we are confronted with a system of mixed schools. It is a matter of common knowledge that in a large number of the counties and cities of this Territory there are large numbers of colored children of

school age, and entitled to the benefits of the common schools. Under the provisions of article 8, *supra*, provision has been made for separate schools; buildings have been erected, teachers employed, furniture and apparatus purchased for these schools; and a thorough and complete system of separate schools has been, and is now being, maintained. And section 3, quoted above, is the only provision in our statute whereby the revenues are provided for meeting this expense.    Strike down this provision, and, under the constitution of the United States, these colored pupils are entitled to and cannot be denied free and equal rights and privileges with the whites in the public schools.    These matters were well known to the legislators who enacted the statute of 1895, and we cannot believe that it was the purpose or intent of the legislature to repeal any of the provisions of the school laws relating to levying taxes or raising revenues for school purposes. Nowhere in the amended revenue act is the subject of schools or school taxes mentioned. If the legislature had intended to abolish the county levy for school taxes, ordinary intelligence would have suggested its mention in the amended act.

There is no repugnancy between the amended revenue laws and the special provisions of the school law, but they can be easily reconciled, and allowed to stand together. Full effect may be given to both without impairing the provisions of either.    Repeals by implication are not favored in law, and, in the absence of clearly expressed legislative intent, a later law will not be held to repeal a former, unless the provisions of the two are so repugnant that both cannot stand; then the former must yield to the later.    The provision in the school law authorizing

the levy of a general county tax for school purposes is an express provision conferring special rights, and is applicable to one particular subject; while the revenue law, as amended by the act of 1895, is a general law on the subject of revenue, and makes general provision for the levy of taxes and raising revenues for general county purposes. It is a well-established and familiar rule in the construction of statutes that an express law conferring special rights or privileges is held never to be repealed by a subsequent statute treating a subject in general terms, and not expressly contradicting the provisions of the prior statute, unless it be absolutely necessary to do so in order to give its words meaning and effect. (*Goodson v. U. S.* 7 Okla. 117, 54 Pac. 423; *U. S. v. Berry*, 4 Fed. 785; *State v. Mayor, etc., of Village of Perrysburg*, 14 Ohio St. 472; *Brown v. Commissioners*, 21 Pa. St. 43; *Van Denburgh v. President, etc.*, 66 N. Y. 3; *In re Evergreens*, 47 N. Y. 216; *McKenna v. Edmundstone*, 91 N. Y. 231; *People v. Quigg*, 59 N. Y. 83; *President, etc., of Town of Ottawa v. La Salle Co.*, 12 Ill. 339; *Covington v. City of East St. Louis*, 78 Ill. 548; *Bateman v. Colgan*, [Cal.] 44 Pac. 238; *State v. La Grave*, [Nev.] 48 Pac. 195; *Bartlett v. Inhabitants of City of Trenton*, 38 N. J. Law, 67; *Hoey v. Gilroy*, 129 N. Y. 132, 29 N. E. 85; *Wormser v. Brown*, 149 N. Y. 163, 43 N. E. 524; *Townsend v. Little*, 109 U. S. 504, 3 Sup. Ct. 357.)

The foregoing authorities are decisive of the question that the amended revenue act of 1895 does not repeal the special provision of the school law authorizing the levy of county tax for school purposes.

The repealing clause of the law of 1895 repeals all laws inconsistent with its provisions. There is no nec-

essary conflict in these laws. The one is for the regulation of levies of taxes for county purposes only, while the other has no reference to revenues for county purposes, but relates solely to revenue for a county school fund to be distributed to the several school corporations of the county, and by them expended for schools and school property.

For the reasons stated, we are of the opinion that the board of county commissioners of Kay county had authority to levy and impose the tax sought to be enjoined, and that the district court committed no error in refusing the injunction. The judgment of the district court is affirmed, at the costs of plaintiffs in error.

Hainer, J., having presided in the court below, not sitting; all of the other Justices concurring.