## GARDNER v. SCHOOL DIST. NO. 87, KAY COUNTY.

No. 1961.    Opinion Filed August 20, 1912.

Rehearing Denied October 8, 1912.

(126 Pac. 1018.)

1.  **SCHOOLS AND SCHOOL DISTRICTS** — Bonds—Statutory Provisions. Bonds issued for the purpose of refunding outstanding legal warrant indebtedness under the act of 1895 were required to be issued under article 1, c. 7, Sess. Laws 1895, as amended by article 1, c. 5, Sess. Laws 1897, and not under article 2, c. 7, of Sess. Laws of 1895.

2.  **STATUTES**—Implied Repeal—General and Special Statutes. A statute which is enacted for the primary purpose of permitting refunding bonds to be issued, and which prescribes the terms and conditions upon which they may be issued and the form and manner of their execution, supersedes a general statute which does not refer to refunding bonds, but which does contain language which might be broad enough to cover them if the special statute was not in existence.

3.  **SAME**—Construction—Conflicting Provisions—General and Special Provisions. Where there are two provisions of the statutes, one of which is special and particular and clearly includes the matter in controversy, and where the special statute covering the subject prescribes different rules and procedure from those in the general statute, it will be held that the special statute applies to the subject-matter, and that the general statute does not apply.

4.  **MUNICIPAL CORPORATIONS** — Bonds—Validity. When negotiable bonds are issued by officers who have no authority under the law to issue them, they are not the valid obligation of a municipality for which the officers purport to act.

5.  **SAME.** It is within the power of a state to prescribe the form in which municipal bonds shall be executed and the officers who shall execute them, and, if they are not executed in the manner prescribed, they impose no liability upon a municipality.

6.  **SAME**—Bona Fide Purchasers. When negotiable bonds have been unlawfully issued by unauthorized officers of a municipality, and have passed into the hands of innocent purchasers, the municipality is not estopped from asserting their invalidity when the bonds disclose upon their face the purpose for which they were issued and the absence of the signature of the officer who is required by law to execute them.

7.  **SAME.** Those dealing with a municipality do so with notice of its powers; and purchasers of municipal bonds are charged with notice of the laws of the state granting power to make the bonds they find on the market.

(Syllabus by Ames, C.)

*Error from District Court, Kay County;*
*W. M. Bowles, Judge.*

Action by J. W. Gardner against School District No. 87 of Kay County. Judgment for defendant, and plaintiff brings error. Affirmed.

*Burwell, Crockett & Johnson,* for plaintiff in error.

*Dale, Bierer & Hegler,* for defendant in error.

Opinion by AMES, C.  This action was brought by the plaintiff, J. W. Gardner, against the defendant, School District No. 87 of Kay County, to recover on a number of coupons attached to bonds issued by the school district, the payment of which had been refused.  The case was tried on an agreed statement of facts, the substance of which is that these bonds were issued by the district pursuant to an election held in 1903, and under article 2, c. 7, Sess. Laws 1895; that at the time the outstanding indebtedness of the district consisted of unpaid legal warrants in the aggregate sum of $3,000; that the assessed valuation of the district was $122,408; that, when the bonds were issued, they were signed by the director and clerk of the district, and left in the possession of W. A. Brooks, cashier of a bank at Tonkawa, for the purpose of trying to find a purchaser; that Brooks sent the bonds to one McGinley for inspection and sale; that McGinley on his own account had the bonds registered by the territorial auditor and the county superintendent and county clerk, who returned them to the said McGinley, at Guthrie; that said McGinley in July, 1903, sold them to Duke M. Farson, of Chicago, and embezzled the proceeds; that the plaintiff, Gardner, was a *bona fide* purchaser from Farson; that the district court never ascertained that the outstanding warrant indebtedness was legal, and never authorized the bonds, or executed the same; and that the school district never received any part of the proceeds of their sale.  Other facts were agreed upon which are not material in the view we take of the case.

The first question is whether the bonds should have been issued under article 1, c. 7, of Sess. Laws 1895, or article 2 of

the same chapter. Article 1, as amended by article 1, c. 5, Sess. Laws 1897, authorizes the board of education of a school district, as well as other municipal corporations, "to fund its outstanding legal warrant indebtedness," and to issue bonds therefor. Section 2 provides that the bonds shall be signed by the director, attested by the clerk, and countersigned by the treasurer of the school district. Section 3 requires the director, clerk, and treasurer of the school district to ascertain the outstanding warrant indebtedness, to cause notice to be issued by publication that they will proceed in the district court on a day to be named to make a showing, and apply for a decree of the court determining the amount of the outstanding legal warrant indebtedness, and sign the bonds to be issued in payment of the same. Such notice shall inform all persons interested that they may be present, and shall state the amount of the indebtedness as before ascertained by the officers of the school district. Section 4 provides that on the day named in the notice the officers shall go before the district court "and make proof to the satisfaction of the court of the existence, character and amount of the outstanding legal warrant indebtedness." Upon such proof being made, the court shall cause to be made upon its records a statement and finding to that effect, and shall then, in open court, sign each bond to be issued, and shall thereupon deliver the same to the treasurer of the school district, who shall thereupon be chargeable on his official bond for the amount of the bonds.

It is the contention of the defendant that the bonds were not issued under this act, that there was no decree of the court establishing the validity of the warrants which they were issued to refund, that there was no record made by the court of any decree, that the judge did not sign the bonds, and that nothing was done as required by this statute. It is conceded by the plaintiff that this is true, but the plaintiff's contention is that it was unnecessary to proceed under this article, but that the proceedings which were taken were under article 2, c. 7, of Sess. Laws 1895, and that the bonds were regularly issued under that article. Section 1 of article 2 (Sess. Laws 1895, p. 68) is as follows:

"Section 1, of article 6, chapter 73, statutes of Oklahoma, 1893, is hereby amended to read as follows: Section 1. That for the purpose of purchasing one or more school sites, erecting, purchasing or paying for and furnishing one or more school-houses in and for any school district in the territory of Oklahoma, the board of directors of the same shall have the power to issue the bonds of the district in an amount not exceeding, with all outstanding indebtedness, four per cent. of its taxable property, as shown by the last assessment thereof, and for the purpose of extending the time of payment of the school district indebtedness, or of the bonded indebtedness of any school district, the board of directors shall have the power to issue the bonds of the district, in a sum not to exceed in amount its outstanding indebtedness, including bonded indebtedness: Provided, that no bonds shall be issued until, at an election called for that purpose, the question shall have been submitted to the qualified electors of the district, and two-thirds of all the qualified electors voting at such election declared by their ballots in favor of issuing the same. Qualified electors, for the purpose of this act, are hereby declared to be all persons, male or female, over the age of twenty-one years, who are citizens of the United States and have been *bona fide* residents for more than three months next preceding such school district bond election, within the limits of such school district: Provided, further, that no such election shall be ordered unless a petition, stating the purpose for which the bonds are to be issued, and signed by at least one-third of the qualified electors, as herein defined, of such school district, as shown by the last preceding enumeration, by the township trustee of the township in which such school district is located, shall have been presented to the district board, praying that a vote be taken for the issuing of such amount of bonds as may be asked for therein; and, Provided further, that it shall be unlawful for any school district to create any bonded indebtedness unless there are at least eight persons between the ages of six and twenty-one years actually residing within the limits thereof, as shown by a census taken by the clerk of such district, not more than three months previous to such bonded election, and by such clerk verified upon oath."

It is contended by the plaintiff that under the general provisions of this section these bonds were issued "for the purpose of extending the time of payment of the school district indebtedness." Article 1 of this chapter deals specifically with refunding bonds, and as a condition precedent to their validity, requires

an adjudication by the court that the warrant indebtedness for which they are to be issued is valid, and as solemn evidence of this adjudication requires a record to be made on the journals of the court, and as notice to all persons who acquire them requires the district judge himself to execute them. Article 2 of this chapter does not deal specifically with refunding bonds, but has to do primarily with bonds issued for purchasing sites and erecting schoolhouses, and then, in general terms, authorizes bonds to be issued for the purpose of extending the time of payment of the school district indebtedness.

We therefore have a statute primarily enacted for the purpose of permitting refunding bonds, and prescribing the safeguards around their issuance which the Legislature thought necessary; while, on the other hand, we have a general statute which does not refer to refunding bonds, but which contains language which might be broad enough to cover them if standing alone. Which statute governs? Both were passed by the same Legislature and approved on the same day, March 8, 1895. Article 1 was evidently designed to protect the school districts, as well as the other municipalities therein named, against the payment of outstanding illegal warrant indebtedness as well as to protect the holders of outstanding legal warrant indebtedness. In order to accomplish both of these objects, it requires the district court to pass on the validity of the indebtedness, and to evidence its action in the most formal way, both by entry upon its records and by signature of the judge upon the bonds. Even if we assume that, but for article 1, article 2 by its general terms would permit the issuance of refunding bonds without the decree of the court, still, with this specific provision carefully regulating the method of refunding warrant indebtedness, it seems to us it was the legislative intention to require refunding bonds to be issued in this special way instead of by the general provisions of article 2. This conclusion also finds support in the state of the law prior to these acts of 1895. By the act of 1893 (St. Okla. 1893, sec. 5823) it was provided:

"That for the purpose of erecting or purchasing one or more schoolhouses in and for any school district in the territory of

Oklahoma, the board of directors of the same shall have the power to issue the bonds of the district in an amount not to exceed five per cent. of its taxable property as shown by the last assessment thereof. And for the purpose of extending the time of payment of the school district indebtedness, or of the bonded indebtedness of any school district, the board of directors shall have the power to issue the bonds of the district in a sum not to exceed in amount its outstanding indebtedness, including bonded indebtedness; provided, that no such bonds shall be issued until, at an election called for that purpose, the question shall have been submitted to the qualified electors of the district and a majority of all the qualified electors of the district shall have declared by their ballots in favor of issuing the same; and provided, further, that no such election shall be ordered unless a petition stating the purpose for which the bonds are to be issued and signed by at least one-third of the qualified electors of said district shall have been presented to the district board praying that a vote be taken for the issuing of such amount of bonds as may be asked for therein; and provided further, that it shall be unlawful for any school district to create any bonded indebtedness unless there are at least eight persons between the ages of six and twenty-one years actually residing within the limits thereof as shown by a sworn census taken by the director or board of directors of such school district; provided, further, warrants already issued by the township board for the purpose of building schoolhouses and purchasing furniture and school fixtures are hereby declared to be legal."

It will be noticed that this is the origin of art. 2, c. 7, Sess. Laws 1895, and that the exact language upon which the plaintiff relies was contained in the act of 1893, as well as in the act of 1895; that language being as follows:

"And for the purpose of extending the time of payment of the school district indebtedness, or of the bonded indebtedness of any school district, the board of directors shall have the power to issue the bonds of the district. * * *"

In this language the act of 1895 makes no change whatever, and, as this is the exact language on which the plaintiff relies, it follows that for the purpose of determining its meaning the act of 1895 should be treated as a later expression of the legislative will. If it was the intention of the Legislature to permit these bonds to be issued under this language, then the act of 1895, relating particularly to the issuance of refunding bonds, was wholly

unnecessary, and prescribed a method of protection which did not protect, because the safeguards there carefully provided could all be escaped by the mere volition of the officers of the school district.

We conclude, therefore, that it was the purpose of the Legislature to require the district court to pass upon the outstanding warrant indebtedness before refunding bonds could be issued therefor, and that, therefore, the bonds here involved, being issued without the order of the court, were issued in violation of the law and are void. This conclusion is in harmony with the general rules of statutory construction.

In *Territory of Oklahoma ex rel. John J. Sampson v. Clark,* 2 Okla. 82, 92, 35 Pac. 882, it is said:

"Another well-known rule of interpretation of statutes which guides us in our conclusion in this case is that, where there are specific provisions in the act relating to a particular subject, they control as against general provisions in other parts of the statute, although the general provisions standing alone would give to the act another meaning."

In *A., T. & S. F. Ry. Co. v. Haynes,* 8 Okla. 576, 58 Pac. 738, it is said in the syllabus:

"When statutes contain two distinct provisions, one being specific with precise directions to do a particular thing for a specific purpose, and the other general, prohibiting certain acts which, in their general sense, include the particular thing authorized by the specific direction, the general prohibition clause does not control the specific authority. The particular direction is to be construed in the nature of an exception."

In Endlich on the Interpretation of Statutes, sec. 216, it is said:

"Hence, if there are two acts, or two provisions in the same act, of which one is special and particular, and clearly includes the matter in controversy, whilst the other is general and would, if standing alone, include it also; and if, reading the general provision side by side with the particular one, the inclusion of that matter in the former would produce a conflict between it and the special provision, it must be taken that the matter was designed as an exception to the general provision."

In *Crane v. Reeder,* 22 Mich. 323, it is said:

"But considering these as contemporaneous statutes, and that they should, therefore, be construed together; and, as already shown, that the intention is perfectly clear that the main provisions of the special act were intended to have permanent effect as well after as before the revision should take effect, thus providing a special mode of selling and disposing of such escheated lands in a different manner from that provided for other lands, and that the provisions of section 11 of chapter 59 are general, applying to many classes of lands, while those of the special act are special and particular, referring to but one class, we think this a proper case for the application of the familiar rule for the construction of statutes, that where there are two acts or provisions, one of which is special and particular, and certainly includes the matter in question, and the other general, which, if standing alone, would include the same matter and thus conflict with the special act or provision, the special must be taken as intended to constitute an exception to the general act or provision, especially when such general and special acts or provisions are contemporaneous, as the Legislature are not to be presumed to have intended a conflict. See Dwarris on Statutes (2d Ed.) 513; *Standen Nichols v. Bertram*, 3 Pick. [Mass.] 342; *State v. Rackley*, 2 Blackf. [Ind.] 249; *Stockett v. Bird*, 18 Md. 484; *McFarland v. State*, 4 Pike [Ark.] 410; *Pearce v. Bank of Mobile*, 33 Ala. 693; *Brown v. County Commissioners*, 21 Pa. 37; *Ottawa v. La Salle*, 11 Ill. 654; *Fosdick v. Perrysburg*, 14 Ohio St. 472; *Black v. Scott*, 2 Brock. 325 [Fed. Cas. No. 1,464]. The authorities would warrant the statement of the rule of construction in much broader terms than I have given it, and this case falls far within its limits. The considerations already stated are sufficient to establish beyond a reasonable doubt, that the special act was not intended to be repealed by the taking effect of the Revised Statutes."

Having determined that the bonds in this case were issued without authority of law, and were therefore invalid, it remains to inquire whether the defendant is estopped from asserting their invalidity.

On their face the bonds show that they were not signed by the district judge, and therefore show that they were not issued pursuant to article 1, c. 7, Sess. Laws 1895, which we have held was the only law under which they could have been issued. On the contrary, the bonds themselves contain this recital:

"This bond is issued by the School District No. 87, county of Kay, territory of Oklahoma, for the purpose of refunding outstanding indebtedness of the said school district and in pursuance of art. 6, c. 73, St. Okla. 1893, entitled 'An act for the support and regulation of common schools,' as amended by article 2 of chapter 7 of the Session Laws of 1895, entitled 'School district bonds.' "

This recital shows that they were issued for the purpose of refunding outstanding indebtedness, and that they were issued under article 2 of chapter 7, which is not the article relating to refunding outstanding indebtedness, as article 1 of that chapter expressly covers refunding outstanding legal warrant indebtedness, as heretofore shown, and section 8 of the same article covers the refunding of outstanding bonds. It seems to us, therefore, that the bonds on their face show the infirmity which accompanies them, and that the question now under discussion is concluded by the case of *Anthony v. County of Jasper,* 101 U. S. 693, 25 L. Ed. 1005. In that case the Missouri statute under consideration required that the bonds be certified by the State Auditor before they were negotiated, and before they should obtain validity. The bonds had been voted prior to the passage of this act, and the subscription therefor had been made by the county. After the passage of the act, the bonds were antedated and signed by the presiding justice of the county court as of a date prior to the passage of the act requiring them to be signed by the auditor, so that they appeared on their face to be issued regularly. The court held in an opinion by Mr. Chief Justice Waite that the bonds were void in the hands of an innocent purchaser, and in the opinion it is said:

"This brings us to consider the question of estoppel. There can be no doubt that it is within the power of a state to prescribe the form in which municipal bonds shall be executed, in order to bind the public for their payment. If not so executed, they create no legal liability. Other circumstances may exist which will give the holder an equitable right to recover from the municipality the money which the paper he has got represents, but he has no bond which he can enforce as such, or which can be put on the market as commercial paper. The act now in question is, we think, of this character. It in effect provides that no bond issued by counties, cities, or incorporated towns shall be valid—

that is to say completely executed—until it has been counter-signed or certified in a particular way by the State Auditor. For this purpose, after being executed by the corporate authorities, it must be presented to that officer, and he must inquire and deter-mine whether all the requirements of the law authorizing its is-sue have been observed, and whether all the conditions of the contract in consideration of which it was to be put out have been complied with. To enable him to do this, evidence must be submit-ted, which he is required to file and preserve. If he is satisfied, the registry is made and the requisite certificate indorsed on the bonds. This being done, the execution of the bond is complete and, un-der the law, it may then be negotiated; that is to say, put on the market as valid commercial paper. When the certificate is found on the bond, the purchaser need not inquire whether what has been certified to is true. As against a *bona fide* holder, the public is bound by what its authorized agents have done and stated in the prescribed form. Dealers in municipal bonds are charged with notice of the laws of the state granting power to make the bonds they find on the market. This we have always held. If the power exists in the municipality, the *bona fide* holder is pro-tected against mere irregularities in the manner of its execution, but, if there is a want of power, no legal liability can be created. When the bonds now in question were put out, the law required that to be valid they must be certified to by the Auditor of State. In other words, that officer was to certify them before their exe-cution was complete, so as to bind the public for their payment. We had occasion to consider, in *McGarrahan v. Mining Co.,* 96 U. S. 316, 24 L. Ed. 630, the effect of statutory requirements as to the form of the execution of patents to pass the title of lands out of the United States, and there say: 'Each and every one of the integral parts of the execution is essential to the validi-ty of a patent. They are of equal importance under the law, and one cannot be dispensed with more than another. Neither is directory, but all are mandatory. The question is not what, in the absence of statutory regulations, would constitute a valid grant, but what the statute requires.' The same rule applies here. The object to be accomplished is the complete execution of a valid instrument such as the law authorizes public officers to put out and bind the public organization they represent for the payment of money. For this purpose, the law has provided that the instrument must not only be signed and sealed on be-half of the county court of the county, but it must be certified to or countersigned by the Auditor of State. Of this law all who deal in the bonds are bound to take notice."

Applying these principles to the case at bar, it becomes clear that the defendant is not estopped from asserting the invalidity of these bonds. The state has the power to prescribe the terms and conditions upon which negotiable bonds of its various municipalities may be issued. In this case it provided that, before refunding bonds could issue, their validity should be ascertained by the district court, and that, as evidence of this ascertainment, record should be made of that fact, and the district judge should sign the bonds. The officers of the school district, therefore, had no power to issue the bonds, but this power was vested in the district court, and, the district court not having acted, the bonds were issued without authority of law, and were therefore void.

Those dealing with a municipality do so with notice of its powers and the authority of its officers. *O'Neil Engineering Co. v. Incorporated Town of Ryan,* 32 Okla. 738, 124 Pac. 19. And this is likewise true of dealers in municipal bonds, who are charged with notice of the laws of the state, granting power to make the bonds they find on the market. *Anthony v. County of Jasper, supra.* The plaintiff in this case, therefore, was charged with notice of the fact that these bonds, being issued for refunding purposes, could not be issued under art. 2, c. 7, Sess. Laws 1895, but that they must be issued under article 1 of that chapter, and that, to be issued under article 1, they must carry the signature of the district judge. As the bonds showed upon their face that they did not carry this signature, and that they were not issued under this article, they disclosed their own infirmity, and therefore the plaintiff could not be an innocent purchaser for value, and the school district is not estopped from asserting their invalidity.

The judgment of the district court should be affirmed.

By the Court: It is so ordered.