WHITE et al.

v.

BOARD OF COUNTY COM'RS OF TULSA COUNTY et al.

No. 35974.

Supreme Court of Oklahoma.

Feb. 9, 1954.

Rehearing Denied March 2, 1954.

Application for Leave to File Second Petition for Rehearing Denied March 16, 1954.

James G. Davidson and Joe Francis, Tulsa, for plaintiffs in error.

Robert L. Wheeler, County Atty. of Tulsa County, and Hugh Webster, Tulsa, for defendants in error.

Yates Land, Villard Martin, M. Darwin Kirk, John S. Carlson and Horace D. Ballaine, Tulsa, amici curiae.

Ernest E. Clulow, Jr., and C. R. Thurlwell, Tulsa, amici curiae.

WELCH, Justice.

Carl M. White, Ralph Henley and Frank Koblischeck, Jr., residents, property owners and taxpayers of Tulsa County, for themselves and for all other persons similarly situated, commenced action against the County Commissioners, The Treasurer, and the County Clerk of Tulsa County, to enjoin the expenditure of funds of Tulsa County derived from a certain bond issue.

In petition the plaintiffs, in substance, stated that by the vote of a majority of the people voting in an election in Tulsa County the defendant Board of County Commissioners was authorized to issue bonds of Tulsa County in the sum of $900,000, and that said bonds have been issued and sold. That the official acts of the defendants, and all the publicity and information furnished to the public, leading up to the actual voting on the propositions submitted at the election, limited the purpose of the bond issue to the purpose of acquisition of right-of-way for a roadway described as a grade by-pass from a point on U. S. Highway 66, southwest of

the City of Tulsa, along 51st Street east to Memorial Avenue, in Tulsa, thence north to State Highway 33. That the defendants now intend to expend funds derived from the bond issue for the purchase of right-of-way for a road-way in part paralleling 51st Street, and then northeast along a certain diagonal route to State Highway 33, and in furtherance of a plan for construction of a limited-access road along such route. That the expenditure of the funds for this routing and for this type of construction will be illegal and unauthorized, and that this routing and type of construction would seriously damage the plaintiffs and others.

At trial it was shown that at a time prior to a proclamation calling an election the then members of the Board of County Commissioners of Tulsa County signed a letter which was delivered to the State Highway Department. The letter was signed following a conference between said Commissioners and the Mayor and City Attorney of the City of Tulsa which was held in the Mayor's office. In the letter it is stated.

"We, the undersigned, being the individual duly elected, qualified and acting members of the Board of County Commissioners of Tulsa County, Oklahoma, do for ourselves, individually, affirm as follows:

"1. That we are desirous of obtaining a bridge across the Arkansas River at 51st Street in the County of Tulsa, and the construction and improvement of a highway from the junction of 51st Street and the Sapulpa Road easterly along 51st Street to Memorial Drive, thence northerly to a junction with State Highway No. 33, all located in Tulsa County, Oklahoma.

"2. That we are in accord with, and approve in principle, the plan that such a project be undertaken by the State Highway Department and the Bureau of Public Roads of the United States Government at no cost to the County of Tulsa except the cost of acquiring the necessary rights of way for said project.

"3. That although the County of Tulsa does not at this time have on hand and available for such purposes sufficient funds to acquire said necessary rights of way, we will at the proper time take such steps as may be necessary, and which we may be legally able to do to propose and submit to the qualified electors of Tulsa County a bond issue in an amount sufficient to acquire such necessary rights of way over and across the property lying outside the corporate limits of the City of Tulsa; said rights of way to be at least 175 feet in width if so required by the State Highway Department and the Bureau of Public Roads."

A proclamation was subsequently issued and published calling an election to be held under authority of 69 O.S.1951 §§ 161 to 170. The ballots furnished the voters at the election contained a proposition, as follows:

"Shall the Board of County Commissioners issue the negotiable coupon bonds of Tulsa County, State of Oklahoma, in the sum of Nine Hundred Thousand ($900,000) Dollars * * * for the purpose of providing funds for the purpose of building and constructing permanent state and county roads."

In the time before the election persons in the hire of the City of Tulsa made appraisements of properties located along the 51st Street-Memorial Drive Route, or the route of the road-way as mentioned in the Commissioners' letter, supra, and mentioned in the plaintiffs' petition.

There was an offer of evidence to show certain newspaper articles and non-official advertisements prior to the election which discussed the acquirement of right-of-way and the construction of a highway along the route of 51st Street and Memorial Drive. The said offer of proof was rejected by the trial court.

The defendants in pleading admit a present purpose to expend funds derived from the bond issue to advance the construction of a highway along an officially designated route of a certain description, which route we have herein referred to as the "diagonal

route," the same being the route described in the plaintiffs' petition as an object of their complaint.

It was shown that the County of Tulsa, in conjunction with the City of Tulsa, and the Oklahoma Highway Department and the U. S. Bureau of Public Roads have planned to construct a limited-access highway along said designated and approved route; that the county's part in carrying out such plan is the acquirement of right-of-way and there was testimony that the costs of such right-of-way may equal or be in excess of the amount of the proceeds of the bond issue.

After all of the evidence in the case the trial court made and entered certain findings of fact and conclusions of law and entered judgment that plaintiffs' petition for injunction be denied and that the cause be dismissed.

In argument for reversal of the judgment the plaintiffs assert:

"That the evidence discloses that the official acts of the Board of County Commissioners prior to the bond election of July 4, 1950, were such that the ballot title was limited therein in purpose so that the money derived from the issuance of such bonds can only be spent legally for right-of-way for a non-limited-access by-pass and this by-pass must be along the route of 51st Street and Memorial Drive."

The plaintiffs contend that the Commissioners in official acts before the bond election adopted a plan and purpose of acquirement of right-of-way and for construction of a non-limited-access highway along the route of 51st Street and Memorial Drive as the end and object of the bond issue; that said plan and purpose as reflected by said official acts inhered in the general proposition approved by the majority of the voters at the bond election, and hence the money derived from the issuance of the bonds pursuant to said election may be used only for the purpose of acquirement of right-of-way and construction along said certain route.

With reference to the factual basis of their contention the plaintiffs direct attention to the evidence concerning the letter signed by the members of the Board of County Commissioners and which was delivered to the State Highway Department. Reference is made to testimony and evidence showing that the county engineer was instructed to assist the city engineer in preparing strip maps showing the ownership and boundaries of private properties located along the 51st Street and Memorial Drive route; that persons employed by the City made appraisals of property located along said route, and that newspapers of Tulsa County carried descriptions and maps depicting a highway along said route, all of which occurred before the election.

The record reflects that the newspaper articles tendered in evidence do not purport to be official publications such as to reflect official acts of the Board of County Commissioners. These newspaper publications and the acts of the city employees may not be said to be official acts of said county board. The instructions given and the action taken by the county engineer as pertains to right-of-way, and the commissioners' action thereon presents no stronger inference than that a certain route for right-of-way was under consideration and study by the commissioners. The substance of the letter of the County Commissioners to the State Highway Department is that the members of the Board of County Commissioners promise to act in purpose to acquire a right-of-way which will accord with plans of the State and Federal Departments to construct a bridge and highway.

The trial court made and entered a finding of fact to the effect that there was no resolution or official action of the Board of County Commissioners designating 51st Street and Memorial Drive as a by-pass route.

The minutes of the meetings of the Board of County Commissioners and other records of official acts of the Board introduced in evidence, do not show that the said Board inaugurated or adopted a plan of acquirement of right-of-way along the 51st Street and Memorial Drive route, nor do they contain a mention of said route.

We find no sufficient evidence to support the factual basis of the plaintiffs' first contention for a reversal of the judgment.

The plaintiffs' next contend, "that the funds derived from the bond election under the ballot title and bond procedure incident thereto can not be expended upon a limited access facility."

The election call and election proceedings were in accord with the statutory provisions of 69 O.S.1951 §§ 161 to 170, inclusive, and which provisions authorize an issuance and sale of county bonds for the purpose of "building and constructing permanent state roads".

Admittedly, the defendants intend to use funds derived from the bond issue in acquirement of right-of-way along the diagonal by-pass route in furtherance of a plan for the constructing of a permanent type road to be designated and maintained as a limited access highway or facility.

The plaintiffs direct attention to statutes of subsequent enactment to §§ 161 to 170, supra, and which expressly authorize the establishment and maintenance of limited access facilities; 69 O.S.1951 §§ 11.1 to 11.33. The term "limited access highway" is defined in § 11.1, and it is stated that the term limited access facility shall include limited access highway. Plaintiffs make particular reference to that part of § 11.6 of Title 69, which provides " * * * each county, shall have authority to submit to the voters thereof, the question of whether or not such * * * county shall become indebted for the acquisition or construction of such limited access facility * * *."

It is argued that enactment of a provision specifically authorizing the voting of bonds to acquire or construct a limited access highway, § 11.6, supra, and after and subsequent to the enactment of the general provisions for voting road bonds, §§ 161–170, supra, reflects an intendment of the Legislature to limit the expenditure of county road bond funds to the acquisition of non-limited-access facilities except in instances when the bonds are voted specifically for the acquirement of a limited access facility.

As applicable to the question of the construction of the statutes here involved the plaintiffs cite a rule stated in the case of Gardner v. School Dist. No. 87, Kay County, 34 Okl. 716, 126 P. 1018, wherein said the Court:

"Where there are two provisions of the statutes, one of which is special and particular and clearly includes the matter in controversy, and where the special statute covering the subject prescribes different rules and procedure from those in the general statute, it will be held that the special statute applies to the subject-matter, and that the general statute does not apply."

Other cases are cited wherein the rule is stated that a special statute prevails over a general statute covering the same subject-matter and there is inconsistency or conflict.

In the provisions of §§ 161 to 170, which authorize an issuance and sale of county bonds for "building and constructing permanent state roads", there is no express limitation of the use of the funds derived from the bond issue measured by whether or not the road has been or is to be designated or maintained as a limited access highway.

In 69 O.S.1951 §§ 11.3, 11.4, the Board of County Commissioners of any county, and the State Highway Department are authorized to designate and establish limited access facilities as new and additional highways or to designate any existing highway as a limited access facility, or to vacate or alter limited access facilities. It is note-worthy that a vote of the people is not required before such action. It would seem anomalous indeed that the Legislature would delegate such broad discretion over highways and at the same time intend such a limitation of the use of funds voted to build highways as is here contended for.

In 69 O.S.1951 §§ 161 to 170, inclusive, there is provided a detailed procedure for the calling of an election and for the holding of an election on the proposition of the issuance of county bonds for building

state roads. On the other hand, in 69 O.S. 1951 §§ 11.1 to 11.33 wherein the general subject is "Limited Access Facilities" there is no mention of voting county bonds except as appears in the brief extract we have noted above from § 11.6. We find no conflict as between the provisions of §§ 161 to 170, and the provisions §§ 11.1 to 11.33, nor is there a difference in the procedure set forth as affects the same subject-matter, and such as to suggest an application of the rule stated in the Gardner case, supra.

■ The procedure and authority for voting county bonds for "building and constructing permanent state roads" as provided in §§ 161 to 170, clearly includes an authority to submit the question of whether or not such county shall become indebted for the construction of a limited access highway as that term is defined in § 11.1. We hold the authority granted in the provision of § 11.6 is merely cumulative and not a limitation of the authority granted in § 161 et seq. and that funds derived from a bond issue voted for "building and constructing permanent state roads" and in accord with the provisions of § 161 et seq. may be lawfully expended for the building and construction of a permanent type state road, whether the road may be, or will become a limited access highway.

The plaintiffs contend, "that funds derived from the bond election under the ballot title and bond procedure incident thereto can not be expended for the purchase of right-of-way only."

It is argued that such an expenditure would be contrary to the purpose for which the money was borrowed as reflected by the election proposition which was the issuance of bonds in the sum of $900,000, "for the purpose of providing funds for building and constructing permanent state and county roads," and contrary to the statutes authorizing the borrowing of money by the county.

Reference is made to testimony to the effect that the defendant commissioners had entered an agreement to purchase right-of-way with said bond funds in furtherance of a road of an overall estimated cost of $9,000,000. It is contended that the bond issue funds may lawfully be applied only to the building of a state road which may be fully completed at a cost of not more than $900,000.

A state road as projected or established may be designated or established as a limited access facility, 69 O.S.1951 § 11.1 et seq. A board of county commissioners is authorized to enter into agreement with the state, and/or federal agency having authority to so participate in the construction of highways, respecting the financing, planning and establishment of limited access facilities. 69 O.S.1951 §§ 11.3, 11.5.

■ Obviously, the procurement of right-of-way is an essential of the building of a road. Under the evidence herein showing the defendant commissioners have entered into agreement with the State Highway Department respecting the financing of a completed state road and whereby the county has agreed to the purchase of the right-of-way, we find that the expenditure of the funds derived from the bond issue for the purchase of said right-of-way accords with the purpose for which the bonds were voted, namely, for the building and constructing of permanent state roads. We must assume the good faith of the County Commissioners and of the State Highway Commission, and that the road will be fully completed.

As a final proposition that the trial court erred in refusing injunction, the plaintiffs state:

"That the funds derived from the bond election can not be expended as proposed by the defendants inasmuch as they have not complied with the requirements of the laws of the State of Oklahoma, and in particular Title 69, Okla.Stats.Ann., Sec. 304."

69 O.S.1951 § 304, provides:

"When any county has voted to issue bonds for building permanent state roads and bridges thereon as provided in Section 7619 Revised Laws of Oklahoma, 1910, and amendments thereto, it shall be the duty of the county commissioners of such county, before proceeding further, to request the State

Highway. Commissioner to designate a recognized expert highway engineer to act as consulting engineer. The department shall thereupon designate such consulting engineer, whose compensation shall be agreed upon by the department and the board of county commissioners and paid out of the proceeds of such bond issue. It shall be the duty of such consulting engineer to supervise the making of all surveys, estimates, plans and specifications for the improvement proposed, and no money shall be paid out on such improvement until such consulting engineer shall have first inspected and approved the items as conforming to the requirements set forth in the adopted plans and specifications, which shall be of record as provided by law.

"No contracts shall be let by the board of county commissioners at a price exceeding the estimate made and approved by the consulting engineer and no alterations or changes shall be made excepting on the written approval of said consulting engineer advising such change. Any such consulting engineer shall be removed and another appointed by the department upon request of the board of county commissioners."

The above statutory provision was enacted in 1916, and quite apparently was to have application when by law the county commissioners had complete and exclusive control in the matter of contracting for the construction of a permanent state road or bridge, and in the supervision of the construction thereof.

In the 1923–24 Session of the Legislature a comprehensive State Highway System law was enacted, providing that the State Highway System shall be designated by the State Highway Commission, and when the State Highway Commission shall have taken over any highway, or part thereof, said commission shall become responsible for the construction, repair and maintenance of such highway and for this purpose shall be authorized to use any funds in the State Highway fund, together with any money derived from any agreement entered into between the State Highway Commission and any county; that the construction and maintenance of the State Highway System, and all work incidental thereto, shall be under the general supervision and control of the State Highway Commission, said Commission shall have power to make all final decisions affecting the work and to pay for engineering, preparation of plans and specifications, cost of advertising, engineering supervision and inspections, and all expense and contingencies in connection with the construction and maintenance of such State Highway System.

It is provided that all contracts for construction work upon the State Highway System shall be let to bidder or bidders with authority in the Commission to reject and accept bids and that the successful bidder for the construction of such work shall enter into contract furnished and prescribed by the Commission, and shall give good and sufficient bond in a sum equal to the contract price, to the State of Oklahoma, with sureties approved by the Commission to insure proper and prompt completion of said work in accordance with the provisions of said contract and the plans and specifications as furnished and prescribed by the Commission. 69 O.S. 1951 §§ 44, 45, 48.

Thus, it is apparent that since the enactment of the provision § 304, supra, the Legislature has provided a mode and manner of the preparation of estimates, plans and specifications, and for the construction and the supervision of the construction of state roads, and of the use of county bond funds in connection therewith, such as to render the provisions of § 304 ineffective. Since all final decision in the construction of state roads has been vested in the State Highway Commission the appointment of a consulting engineer for the County Commissioners, in the instance that a county may have voted bonds for building permanent state roads, serves no purpose. Although the statute § 304 has not been specifically repealed, we find that in subsequent legislation its force has been

rendered nugatory and that the County Commissioners are relieved of any duty of compliance with said section 304.

We find no error in the proceedings or judgment of the trial court, and no merit in the grounds urged for reversal.

The judgment of the trial court is affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and CORN, DAVISON, O'NEAL and BLACKBIRD, JJ., concur.

WILLIAMS, J., dissents.